837 F.2d 587
 10 Fed.R.Serv.3d 128, 25 Fed. R. Evid. Serv. 418
 Willie OUTLEY, Appellant,
v.
The CITY OF NEW YORK, P.O. John Doe, P.O. John Doe, Benjamin
Ward, Robert Gartner, and Jeff Garner, Appellees.
Willie OUTLEY, Appellant,
v.
Charles GOETZ, Shield No. 30792, individually and as a
police officer of the City of New York, "John Doe,"
individually and as a police officer of the City of New
York, Patrick McGuire, individually and as Police
Commissioner of the City of New York, Edward McHugh, and the
City of New York, Appellees.
 Nos. 43, 45, Dockets 87-7283, -7285.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 19, 1987.
Decided Jan. 25, 1988.
 
 Richard B. Friedman, Weil, Gotshal & Manges, New York City (Constance Cushman, Richard S. Mandel, of counsel), for appellant.
 Elizabeth S. Natrella, Asst. Corp. Counsel (Peter L. Zimroth, Corp. Counsel for the City of New York, Pamela Seider Dolgow, Asst. Corp. Counsel, New York City, of counsel), for appellees.
 Before OAKES, CARDAMONE, and MAHONEY, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 Plaintiff Willie Outley appeals from a jury verdict in favor of four individual police officers, whom he charged violated his constitutional rights on two separate occasions. Trial was held before Judge Lloyd F. MacMahon in United States District Court for the Southern District of New York. Because the trial court abused its discretion in precluding two eyewitnesses from testifying on the plaintiff's behalf and in admitting evidence of prior lawsuits filed by the plaintiff against the City of New York and others, we reverse and remand.
 
 
 2
 Outley's two section 1983 claims, 42 U.S.C. Sec. 1983 (1982), (consolidated for trial, but tried seriatim ) arose from two incidents of alleged police brutality by New York City police officers. The first was related to an arrest on the morning of June 9, 1981 ("the 1981 incident"), and the second to a street stop on March 11, 1984 ("the 1984 incident"). In the 1981 incident Outley claims he was improperly stopped by two police officers, taken against his will to a police station and arrested, denied any opportunity to speak with an attorney or with his wife, and held for seventeen hours in a "small filthy jail cell" before appearing before a magistrate who dismissed the matter. Outley claims that he was treated roughly throughout the detention and subjected to racial insults. He sought compensatory and punitive damages for lost property and for injury to his back.
 
 
 3
 The 1984 incident allegedly occurred while Outley was walking home from a local store at approximately 6:00 a.m. He was stopped by two police officers who called him over to their patrol car. While Outley stood alongside the passenger side window, one officer allegedly reached out of the window and searched Outley's pockets, at one point pulling on his jacket, causing him to slip and fall down. One of the officers then allegedly warned Outley that he "would regret it" if he reported the incident to any authorities, and the patrol car sped off.
 
 
 4
 Outley testified that, after getting up, he saw two men, both previously unknown to him, standing at the store he had just left. He asked them if they had seen what had happened, and if they would be willing to testify. They agreed, and Outley then left and walked home.
 
 
 5
 After these two lawsuits were filed, Outley responded to the defendants' first set of interrogatories, including, inter alia, the names of the two witnesses to the 1984 incident, Ivan Black and Thomas Young, and the fact that they lived in Queens. The plaintiff did not then know the address or telephone number of either Black or Young, and plaintiff's counsel was unable to contact the witnesses until several weeks before trial, finally interviewing them approximately ten days before the trial began. Plaintiff's counsel inadvertently failed to supplement the prior interrogatory response, as required by Fed.R.Civ.P. 26(e),[1] so that the City never learned of Black's and Young's addresses. However, the City never contacted plaintiff's counsel with a request for these addresses, and the record indicates no attempt by the City to contact Black or Young or any of the witnesses to the 1981 incident.
 
 
 6
 The two claims were combined into a single trial which began at 2:00 p.m. on March 3, 1987. Outley's counsel in his opening statement told the jury that they would hear "testimony of two other witnesses to this [the 1984] incident," neither of whom knew Outley at the time. Plaintiff's counsel briefly described what the witnesses' testimony would entail, noting that they would not be able to identify the officers, but that they would testify that the incident took place. On the morning of March 5, after testimony as to the 1981 incident had been completed, the City moved to preclude the testimony of Young and Black on the ground that the plaintiff's failure to supplement his answers to the defendants' interrogatories violated Rule 26(e). After learning that plaintiff's counsel had discovered the addresses at least ten days and probably four or five weeks prior to trial, the court granted the City's request and precluded the witnesses from testifying. Later that day the plaintiff moved that he be allowed to put on the two witnesses and the court, after argument from both sides, denied the motion.
 
 
 7
 The jury returned a verdict for the defendants in both cases.
 
 Preclusion of eyewitness testimony
 
 8
 Undue delays in individual trials are, of course, to be avoided. The district court's efficient control of its docket is undoubtedly among the most important tools in fighting endemic delay. We recognize also that the trial judge here involved has an enviable record of docket control. However, as we have stressed in the past, tight docket control is not an end in itself. Rather, its purpose is "assuring that justice for all litigants be neither delayed nor impaired." Winston v. Prudential Lines, 415 F.2d 619, 621 (2d Cir.1969), cert. denied, 397 U.S. 918, 90 S.Ct. 926, 25 L.Ed.2d 99 (1970). " '[A] court must not let its zeal for a tidy calendar overcome its duty to do justice.' " Id. (quoting Davis v. United Fruit Co., 402 F.2d 328, 331 (2d Cir.1968), cert. denied, 393 U.S. 1085, 89 S.Ct. 869, 21 L.Ed.2d 778 (1969)). See also Beary v. City of Rye, 601 F.2d 62, 63 (2d Cir.1979); Peterson v. Term Taxi Inc., 429 F.2d 888, 891 (2d Cir.1970). Unfortunately, it appears that here the district court's sense of duty, if not overcome, was at least too strongly influenced by its desire to clear its docket.
 
 
 9
 Outley's counsel clearly violated Fed.R.Civ.P. 26(e)(1), in failing to provide the City with the address and telephone number of each witness after he learned them. While the rule itself provides no express sanctions for a violation, the Advisory Committee note states that "[t]he duty [to supplement responses] will normally be enforced, in those limited instances where it is imposed, through sanctions imposed by the trial court, including exclusion of evidence, continuance, or other action, as the court may deem appropriate." It is worth noting that Fed.R.Civ.P. 37, the general rule concerning sanctions against parties unjustifiably resisting discovery, does not cover the failure to supplement responses. See 8 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2050 (1970 & Supp.1987). Rather, it is within the inherent power of the district court to impose sanctions for a violation of Rule 26(e). However, cases interpreting Rule 37 are useful in determining the proper approach to be taken by the trial court.
 
 
 10
 The district court has wide discretion in punishing failure to conform to the rules of discovery. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam) (Rule 37 sanction); Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir.1979) (same). However, we have not hesitated to reverse when a trial court "permit[s] its zeal for clearing its calendar to overcome the right of a party to a full and fair trial on the merits." Beary v. City of Rye, 601 F.2d at 63. The refusal to allow the plaintiff's eyewitnesses to testify, an extreme sanction in any case, see Cine Forty-Second Street Theatre Corp., 602 F.2d at 1064, here had an excessively harsh effect.
 
 
 11
 We take guidance from the Fifth Circuit's analysis in Murphy v. Magnolia Electric Power Association, 639 F.2d 232 (5th Cir.1981), of the proper sanctions for failure to supplement answers under Rule 26(e). The appellate court reversed and remanded where the trial judge prevented the plaintiff's expert witness from testifying because of the plaintiff's failure to supplement answers to interrogatories to provide defendant's counsel with the expert's name. After noting that exclusion of evidence is, in certain cases, a proper sanction for a violation of Rule 26(e) and referring to the considerable discretion granted to the district judge, the court identified four factors which the district court should consider, including " 'the explanation, if any, for the failure to name the witness [or to otherwise supplement the answer], the importance of the testimony of the witness, the need for time to prepare to meet the testimony, and the possibility of a continuance.' " Id. at 235 (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2050 at 327). See also Johnson v. H.K. Webster, Inc., 775 F.2d 1, 8 (1st Cir.1985) ("Trial and appellate courts should look to the conduct of the trial, the importance of the evidence to its proponent, and the ability of the defendant to formulate a response."); Meyers v. Pennypack Woods Home Ownership Association, 559 F.2d 894, 904-05 (3d Cir.1977) (in sanctioning failure to list witnesses in pretrial memorandum, court should consider, inter alia, proponent's bad faith, ability of proponent to discover witness earlier, validity of proponent's excuse, willfullness of violation). This analysis requires the district court to consider the importance of the testimony to the case, the prejudice to the party inconvenienced, and the administrative difficulty which the court itself would face.
 
 
 12
 Here there is no suggestion in the record that the failure of plaintiff's counsel was anything but the good-faith oversight of an inexperienced practitioner. Counsel for the City made no request for the witnesses' addresses and telephone numbers during the two years between the date of the incomplete answer and the time of trial, although she did offer on more than one occasion to exchange witness lists, a procedure which might have alleviated the problem. The City admits that the plaintiff's opening statement on the afternoon of March 3 informed them that the plaintiff would be calling the two eyewitnesses, yet gives no reason why counsel waited until the morning of March 5 to move to have the witnesses precluded from testifying. The rules of discovery were not designed to encourage procedural gamesmanship, with lawyers seizing upon mistakes made by their counterparts in order to gain some advantage. The City sought the most drastic remedy, preclusion, rather than requesting a recess or continuance. See Johnson v. H.K. Webster, Inc., 775 F.2d at 8 ("Courts have looked with disfavor upon parties who claim surprise and prejudice but who do not ask for a recess...."). Plaintiff's good faith mistake, in the absence of any prior request from the City, in no way suggests preclusion as the appropriate sanction.
 
 
 13
 The testimony of Thomas Young and Ivan Black was extremely important to Outley's case. Plaintiff's counsel made an offer that Young and Black would testify to witnessing the 1984 incident described by Outley. Not only would their testimony provide independent evidence in what was otherwise essentially a test of Outley's word against the officers (who testified the incident never occurred), but their testimony would also bolster Outley's credibility. Because the evidence of these witnesses was so important, only extreme misconduct on the part of the plaintiff or extreme prejudice suffered by the defendants would justify the extraordinary sanction of preclusion in this case.
 
 
 14
 The third factor, the need for time to prepare to meet the testimony, goes to the prejudice suffered by the opposing party. Here the testimony of Black and Young was not the technical or specialized evidence given by an expert witness; rather, it was the simple observation of a single incident. Certainly a brief interview would have allowed the City to probe the ability of the witnesses to observe, to find out why Black and Young were on the street, and to uncover weaknesses or conflicts in their testimony. The City claimed, justifiably, that, although it could quickly check on whether either witness had a criminal record, it would have a difficult time in conducting a background investigation to determine whether Young or Black had any prior connection to Outley or any interest in the case. However, there was no representation by counsel as to how quickly such an investigation could be completed, nor any specific charge of bias on the part of either witness, only the suggestion that an investigation "might turn up some very interesting material." While the City would have been put to some inconvenience, in the absence of a more definite showing of prejudice the added burden on the City does not require preclusion.
 
 
 15
 The final factor to be considered is the possibility of a continuance. When the City brought the motion to preclude, the court allowed Outley's counsel to respond. He stated, "We recently obtained the addresses [of Black and Young] within the last ten days. I will be happy to afford counsel an opportunity to speak with--."[2] At this point Judge MacMahon cut him off, stating, "That just delays the trial. I preclude you from using them. You had it ten days. There is no reason you couldn't have given it to them so they could interview these witnesses and be prepared."
 
 
 16
 After plaintiff's counsel suggested that the interview might be conducted during the lunch recess that day, the judge responded,
 
 
 17
 No, we are not going to do that, everything is delay, delay, delay here. There is no excuse for it. None. The reason for those rules is so that lawyers will come here prepared, so that juries won't have to be sitting around, that lawyers won't have to be rushing through things at lunch hours, so that we will have some kind of a reasonable, sensible, helpful process, not that we will be playing games, so I preclude you.
 
 
 18
 There had been no other continuances in the trial, and there is nothing in the record which suggests that the court or either party would have been unduly harmed by a continuance, or even how long a continuance would have been needed. Indeed, had counsel for the City acted after plaintiff's opening statement they would have had at least one full day to investigate the two witnesses.
 
 
 19
 Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses. "Considerations of fair play may dictate that courts eschew the harshest sanctions ... where failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence." Cine Forty-Second Street Theatre Corp., 602 F.2d at 1068. Here the trial judge failed to do either. Hence we must reverse as to the 1984 incident.
 
 Evidence of prior lawsuits
 
 20
 An important part of the City's overall defense was to undermine Outley's credibility by, inter alia, portraying him as a chronic litigant. The City contends that it made reference to previous lawsuits filed by Outley in order to impeach his credibility on the basis of prior inconsistent statements made in in forma pauperis applications filed in the two matters before the court and in four other lawsuits. This contention is less than compelling in light of the City's opening statement, over objection, that "[t]he plaintiff in this matter, Willie Outley, is a perpetual litigant. The two cases which will be tried before you are only two of many cases brought by Mr. Outley [here plaintiff's objection was overruled]--and/or his wife against police officers, other government agencies, and other individuals."[3] The charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown to have been fraudulent. See McCormick on Evidence Sec. 196 at 578-81 (3d ed. 1984); 3A J. Wigmore, Evidence Secs. 963, 981 (Chadbourn rev. 1970). As we said in Raysor v. Port Authority, 768 F.2d 34, 40 (2d Cir.1985), cert. denied, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986), "[a plaintiff's] litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant. The trial court has a duty to prevent exploitation of this prejudice...." (Citation omitted.) Although Raysor dealt with questions asked of a pro se litigant, the serious impact of a charge of litigiousness, and the responsibility of the trial judge to guard against it, remain the same when the accusation is made in an opening statement or when the party is represented by counsel, see Palmeri v. Manhattan Railway Co., 133 N.Y. 261, 266-67, 30 N.E. 1001, 1002 (1892), particularly since counsel's objection to the statement was overruled. See Nourse v. Welsh, 23 A.D.2d 618, 257 N.Y.S.2d 96, 97 (1965) (mem.).
 
 
 21
 Two Federal Rules of Evidence bear on our inquiry. The first, Rule 403, states that relevant evidence may be excluded if its probative value is substantially outweighed by, inter alia, the danger of unfair prejudice to a party. The district court is provided broad discretion in making decisions under Rule 403. Fiacco v. City of Rensselaer, 783 F.2d 319, 327-28 (2d Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987); United States v. Robinson, 560 F.2d 507, 514-16 (2d Cir.1977) (en banc), cert. denied, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978). Also relevant is Rule 404(b) which provides that:
 
 
 22
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 23
 Rule 404(b) requires a two-part analysis; first, consideration of whether the evidence fits within the exceptions listed in the rule and, second, balancing the probative value of the evidence against the likelihood of undue prejudice, equivalent to the analysis under Rule 403. Fed.R.Evid. 404, Notes of Advisory Committee. See also United States v. Margiotta, 662 F.2d 131, 142 (2d Cir.1981), cert. denied, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). When this analysis has been conducted by the district judge, "his broad discretion will not be lightly overturned." Id. But in its absence the appellate court will scrutinize whether evidence as to the acts fits into a 404(b) exception, even while acknowledging the substantial discretion afforded the trial court in balancing the probative value against undue prejudice.
 
 
 24
 Litigiousness is the sort of character trait with which Rule 404(b) is concerned. Evidence that Outley had filed several lawsuits against the City, and in particular against police officers, would undoubtedly cause the jury to question the validity of Outley's current claims. Although plaintiff's counsel may have mitigated the damage to his client by pointing out that none of Outley's prior lawsuits had been dismissed on the merits, the harm to Outley, in a case where his credibility was of particular importance, was substantial.
 
 
 25
 The City, contending that its questions about prior lawsuits were designed to impeach Outley's credibility and to show his bias toward white police officers, reminds us that evidence admissible for one purpose is not rendered inadmissible by a separate rule which would preclude it. United States v. Abel, 469 U.S. 45, 56, 105 S.Ct. 465, 471, 83 L.Ed.2d 450 (1984). Impeachment has been recognized as one of the "other purposes" for which evidence of prior acts may be admissible. United States v. Stockton, 788 F.2d 210, 219 n. 15 (4th Cir.) (grand jury testimony describing threats made by defendant toward witness admitted to explain why witness changed testimony at trial), cert. denied, --- U.S. ----, 107 S.Ct. 147, 93 L.Ed.2d 89 (1986). However, recognizing impeachment of credibility as a Rule 404(b) "purpose" does not mean that all prior acts are admissible as impeachment evidence; rather, as the Notes of the Advisory Committee remind us, "evidence of other ... acts is not admissible to prove character as a basis for suggesting the inference that conduct on a particular occasion was in conformity with it." Prior acts may be admitted for "another purpose," provided that the use "does not fall within the prohibition." Fed.R.Evid. 404(b) Advisory Committee Notes.
 
 
 26
 Our reading of the record shows that after the opening reference to Outley's litigiousness the defense was properly permitted to impeach Outley with inconsistent statements on his August 1982 application to proceed in forma pauperis in connection with the lawsuit as to the 1981 incident. The City attorney, over objection, then asked Outley whether since 1979 he had brought four lawsuits in the Manhattan federal court, one in Brooklyn federal court, and one in state court, and whether he had filed a sworn statement in each saying that he needed to proceed as a poor person. Although this questioning might have been proper as a foundation for evidence that Outley had made misleading statements on his prior in forma pauperis applications, no such evidence was forthcoming. In effect, the City's failure to complete its second effort at impeachment resulted in an improper commentary on Outley's litigiousness. The error was exacerbated when Outley resumed the stand to testify in connection with the 1984 incident. On cross-examination he was asked again whether, in addition to the two cases being tried against the City and the City police department, he had brought suits against New Jersey state troopers (for incidents occurring in 1974 and 1975) and against the Department of Sanitation. Outley was even asked on both cross-examinations about lawsuits filed by his wife (one of which was evidently settled quite favorably to the wife). The total impact of the evidence was to show that Outley is "claim-minded," and that the claims before the court were just two more in a long line of lawsuits. Excepting this type of evidence from the general rule of 404(b) would permit an exception to swallow the rule. See McCormick on Evidence Sec. 196 at 579 n. 6 (suggesting that such an exception should require explicit statement in the rule).
 
 
 27
 The City also claims that the plaintiff's history of bringing lawsuits against the police is admissible under 404(b) as evidence of bias, relying on United States v. Abel, 469 U.S. 45, 105 S.Ct. 465.[4] In Abel the Supreme Court did not directly discuss Rule 404(b), but rather held that the use of evidence of bias to impeach a witness is permissible under the Federal Rules of Evidence generally. 469 U.S. at 49-52, 105 S.Ct. at 467-69. The Court rested its holding on the fact that case law before the promulgation of the Federal Rules clearly allowed such impeachment use, and that the drafters' failure to directly address the issue makes it "unlikely that they intended to scuttle entirely the evidentiary availability of cross-examination for bias." 469 U.S. at 50, 105 S.Ct. at 468 (also noting commentators' approval). Specifically, the Court held that a witness's and a party's common membership in an organization, even without proof of either's having personally adopted the tenets of the organization, may be probative of bias. 469 U.S. at 52, 105 S.Ct. at 469.[5]
 
 
 28
 The Court's reasoning in Abel is not applicable here. In effect, the City argues that it introduced the evidence to show that Outley bears a grudge against white police officers and that he acted consistently with that grudge in filing the claims in issue. This strikes us as precisely the sort of use prohibited by Rule 404(b), as going to character rather than bias. This is different, of course, from a case where a party has filed a series of fraudulent lawsuits and there is substantial evidence that the prior lawsuits amounted to a fraudulent pattern, evidence lacking here.
 
 
 29
 So saying, we recognize that there are a few cases permitting cross-examination concerning "[p]rejudice toward a group," even without reference to the witness's specific prejudice against a particular witness or party. See United States v. Kartman, 417 F.2d 893, 897 (9th Cir.1969) (reversing conviction of anti-draft demonstrator for, inter alia, denial of opportunity to cross-examine arresting officer, an ex-Marine, as to bias to anti-draft demonstrators as a group) (citing Jacek v. Bacote, 135 Conn. 702, 68 A.2d 144, 146 (1949) (plaintiff's witness cross-examined as to prejudice against Negroes, defendant being a Negro); Magness v. State, 67 Ark. 594, 50 S.W. 554, 59 S.W. 529 (1899) (prosecution witness cross-examined as to expression of hatred against Africans); see also People v. Christie, 2 Abb.Pr. 256, 259, 2 Park.Cr.R. 579, 583 (N.Y.S.Ct. 1st D.1855) (witness cross-examined on membership in secret society); United States v. Lee Huen, 118 F. 442, 463 (N.D.N.Y.1902) (no presumption of witness bias in favor of defendant of same nationality) (dictum)). These cases fall within the general rubric that "a partiality of mind is ... always relevant as discrediting the witness and affecting the weight of his testimony." See 3A Wigmore on Evidence Sec. 940, at 775 (Chadbourn rev. 1970).
 
 
 30
 But, while it may have some relevance, there are still limitations on this type of cross-examination. As Wigmore himself put it,
 
 
 31
 The range of external circumstances from which probable bias may be inferred is infinite. Too much refinement in analyzing their probable effect is out of place. Accurate concrete rules are almost impossible to formulate, and where possible are usually undesirable. In general, these circumstances should have some clearly apparent force, as tested by experience of human nature, or, as it is usually put, they should not be too remote.
 
 
 32
 Id. Sec. 950, at 795 (quoting 2 J. Wigmore, Evidence, Sec. 949, at 1084). To infer bias against these white police officer defendants on the basis of Outley's prior lawsuits against other police officers is simply "too remote." Proof of Outley's prior lawsuits might be probative as to bias, but their existence alone is hardly conclusive on the issue. In order for a jury properly to consider them, the particular details of each action, and the extent to which the bringing of each action was justified, must be before the jury. Opening up this area thus invites detailed inquiries, denials, and explanations, likely to lead to multifariousness and a confusion of issues. Id. Secs. 951, 952, at 796-99. As such, at least in this case, it is an area of examination better left closed.
 
 
 33
 To determine whether the improper statements made by the counsel for the City during opening and closing arguments and the questions concerning Outley's prior litigation history warrant reversal of the 1981 action, we look to the particulars of the entire trial and the likelihood that Outley suffered genuine prejudice. We hold that he has. This is a case which hung on the plaintiff's credibility. While we recognize that there was other evidence which served to impeach Outley's credibility, we believe that the initial improper comments by the City's attorney were likely to create in the mind of each juror a view of the plaintiff which was reinforced by improper questioning on two separate occasions, and capped off by the prejudicial remarks on summation. The trial proceeded from opening statements to summation in a little over two days. In addition, the court gave no adequate limiting instructions to the jury.[6] We feel that in this context it was likely that the jury regarded Outley first and foremost as a bringer of nuisance lawsuits, and that as a result his claims did not receive a fair hearing.
 
 
 34
 Reversed and remanded as to both actions, to be tried before a different district judge.
 
 
 
 [1]
 Fed.R.Civ.P. 26(e)(1) provides:
 (e) Supplementation of Responses. A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
 (1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.
 
 
 [2]
 It appears that counsel was incorrect; he had interviewed the two ten days earlier but must have had their addresses before then
 
 
 [3]
 Defense counsel also asked Outley, on cross-examination in his first appearance on the stand, "[I]sn't it true that since 1979 you have brought at least four lawsuits in this federal court and one lawsuit in federal court in Brooklyn, and one lawsuit in state court?" After the court denied Outley's objection, and Outley answered in the affirmative, defense counsel continued, "So in those seven years you have brought at least six lawsuits, isn't that true?" The defense also noted Outley's prior litigation history several times during summation, referring to Outley's "pattern and practice of bringing lawsuit after lawsuit against the City of New York Police Officers and others," and noting that "Mr. Outley is no stranger to litigation."
 
 
 [4]
 We note that this line of questioning occurred during the trial relative to the 1984 incident, as to which we have already reversed. However, because our decision to reverse and remand as to the 1981 incident rests in part on the prejudicial impact of the improper statements and questions throughout the entire trial, we discuss whether the evidence was properly admitted
 
 
 [5]
 Abel is also factually quite different from this case. In Abel the focal question was whether the prosecution could call a rebuttal witness to discredit a defense witness, on the basis of the defense witness's membership in a secret prison gang, after the defense witness had denied his membership. More importantly, the testimony elicited was to show particular bias on the part of the defense witness in favor of the defendant, rather than a generalized dislike of some class of persons. The court described bias as "a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." 469 U.S. at 52, 105 S.Ct. at 469. The City is using bias in a much different way, to include Outley's general feelings toward white police officers, not the particular officers on trial. Such tendencies are more properly analyzed as within the definition of character
 
 
 [6]
 The failure to give a limiting instruction is not in itself determinative, especially in light of the fact that plaintiff's counsel failed to request such an instruction. However, we feel it appropriate to consider the absence of such an instruction in assessing the overall prejudice suffered by Outley