**Shelby REED**

v.

**IOWA MARINE AND REPAIR CORP.**

No. 90–4971.

United States District Court,
E.D. Louisiana.

Aug. 11, 1992.

Richard H. Barker, IV, Barker & Boyer, New Orleans, La., for plaintiff.

Maurice C. Hebert, Jr., Wilton E. Bland, III, C. William Emory, Hebert, Mouledoux & Bland, New Orleans, La., for defendant.

## ORDER AND REASONS

MENTZ, District Judge.

Before the Court is the Motion for Sanctions of defendant Iowa Marine Repair Corp. After notice, briefing, testimony, and argument on the motion, as well as supplemental briefing and further supplementation of the record with respect to certain discovery matters, the Court finds the motion to be well taken, though not for the reasons given by the movant. The Court therefore grants the motion and refers the question of the precise amount of the sanction to be imposed to the Magistrate Judge for further findings.

### I.  *Facts*

Shelby Reed hired Richard Barker to represent him in this litigation on September 5, 1990. Mr. Barker filed suit on December 20, 1990, alleging *inter alia* that Mr. Reed had suffered maritime personal injury for which his employer was legally responsible. On July 31, 1991, this Court granted summary judgment in favor of Mr. Reed's employer, Iowa Marine Repair Corp., on the issue of maintenance and cure. This was due to the numerous misrepresentations of his health and litigation history that Mr. Reed had made in his employment application. At trial on the merits, Iowa Marine produced voluminous evidence of prior injuries, litigation, settlements, awards, and even a 100% Social Security disability, all of which predated this litigation and Mr. Reed's employment with Iowa Marine. As a result, the jury rendered a verdict for Iowa Marine, finding that Mr. Reed had not proved even the occurrence of the accident to which he had testified.

Iowa Marine now contends that the conduct of Mr. Barker in prosecuting Mr. Reed's claim was so egregious that sanctions are warranted.[1] The infractions al-

---

**1.** Like sanctions under Rule 11, inherent power sanctions can be imposed well after judgment on the merits. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 394–97, 110 S.Ct. 2447,

leged and supported by the evidence concern Mr. Reed's failure to reveal nine former employers against which he had brought claims or lawsuits for personal injuries. Moreover, Mr. Reed failed to reveal that he had been treated some 155 times in 15 different hospitals for *inter alia* the injuries he alleged against these employers. Mr. Reed sued or made claims against a total of at least ten different employers in the ten years previous to his employment with Iowa Marine, collecting some $159,000.00 in settlements, exclusive of maintenance, compensation, and medical payments. Iowa Marine only discovered these prior employers and injuries through its own investigation of the matter, the expenses of which it now seeks to recover.

With respect to the omissions and misrepresentations in the plaintiff's responses to interrogatories, the relevant time span in determining Mr. Barker's liability for sanctions is defined by the time he learned of them and the time at which he sought to cure them. In late April 1991, Iowa Marine took Mr. Reed's deposition, at which time it confronted Mr. Reed with some of the fruits of its investigation. This put Mr. Barker on notice that the previous responses to interrogatories were untrue and incomplete when rendered. Even more explicitly, counsel for Iowa Marine asked Mr. Barker to supplement his responses to the interrogatories in light of the new information that he had presented. Mr. Barker agreed.

Some two months later, Mr. Barker had not supplemented the responses to interrogatories.[2] Because the trial was then set for September 9, 1991, Iowa Marine filed a motion to compel on July 10, 1991. A hearing on that motion was set for August 14, 1991. On August 13, 1991, Barker supplemented the original responses. Iowa Marine contends that this supplementation consisted only of information that it had produced through its own investigation and had provided to Mr. Barker. It claims that Mr. Reed and Mr. Barker merely "regurgitated" the information that Iowa Marine had discovered in its own investigations. The Court's review of the record indicates that this theory has substantial factual support.

## II. *Law*

### A. Rule 11

■ Iowa Marine's Rule 11 argument is essentially twofold: it contends that Mr. Barker made an inadequate factual inquiry, and that he persisted in carrying the suit forward after learning that it was baseless. In determining Rule 11 liability, this Court applies a standard of objective reasonableness under the circumstances. *Thomas v. Capital Sec. Servs.*, 836 F.2d 866, 873 (5th Cir.1988) (*en banc*). This standard is applied as of "the instant that the attorney affixes his signature to the document." *Smith v. Our Lady of the Lake Hospital, Inc.*, 960 F.2d 439, 444 (5th Cir.1992). Thus, the relevant inquiry concerns "what the attorney objectively knew at the time the challenged paper was signed." Wright & Miller, *Federal Practice and Procedure: 2d* § 1335 at 61 (1990). Rule 11 does not, therefore, impose "a continuing duty to update or correct papers that did not violate the rule when signed or filed." *Schoenberger v. Oselka*, 909 F.2d 1086, 1087 (7th Cir.1990).

#### 1. *Failure to investigate*

■ One of the primary factors in determining whether the attorney has made a reasonable factual inquiry is "the extent of the attorney's reliance upon his client for factual support of the [signed] document." *Smith*, 960 F.2d at 444. With respect to the issues upon which extensive misrepresentations have been discovered, i.e. prior

---

2455–56, 110 L.Ed.2d 359 (1990); *Chambers v. Nasco, Inc.*, —— U.S. ——, ——, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991). This practice has been the subject of certain scholarly criticism, however. *See, e.g.* Cogan, *The Inherent Power and Due Process Models: Sanctions in the Fifth Circuit*, 42 Sw.L.J. 1011 (1989). In this instance, however, the orderly adjudication of the case required that the motion for sanctions be addressed after the merits had been disposed of. *See* § II(A)(2), *infra*.

**2.** Throughout this period, Iowa Marine proceeded with further investigations on its own.

medical and litigation history, the client is presumptively the attorney's best source of information. In this case, it was reasonable to presume that Mr. Reed would know of prior injuries to his own body, and hospitalization and treatment to remedy those injuries. Likewise, it is reasonable to presume that a layman will recall the general tenor of his prior lawsuits, and settlement payments resulting from them.

With respect to information for which the client is presumptively the best source, a rule holding Mr. Barker liable for failing to distrust his client and for failing to seek corroboration would impose an undue burden upon plaintiffs' attorneys' preparation of cases. *Cf. Smith v. Our Lady of the Lake Hospital, Inc.*, 960 F.2d 439, 443–46 (5th Cir.1992). Absent good cause to doubt a client's veracity, an attorney may assume it in the course of zealously advocating the client's claims. The evidence at bar does not establish that Mr. Barker had such good cause prior to Mr. Reed's deposition. Thus, the Court has only indirect and inferential evidence to show that Mr. Barker violated Rule 11 by knowingly presenting to the Court as fact his client's misrepresentations prior to that deposition. Consequently, there is insufficient evidence to establish that any pleading signed before that time violated Rule 11.[3]

### 2. Failure to dismiss as frivolous pleading

Iowa Marine also seeks Rule 11 sanctions for Mr. Barker's failure to dismiss the suit when he learned of Mr. Reed's misrepresentations. Because Iowa Marine did not highlight a particular signed document that violates the Rule 11 standard, this argument would more properly be characterized as a "vexatious multiplication" under 28 U.S.C. § 1927.[4] However, to test the argument fully, the Court will construe it as an assertion of a Rule 11 breach attaching to any signed pleading filed after Mr. Barker had notice of the misrepresentations. Even so construed, this argument only has force if it can be fairly said that misrepresentations in applications for employment or in subsequent litigation can vitiate the substance of a Jones Act claim. *See Witzsche v. Jaeger & Haines, Inc.*, 707 F.Supp. 407, 412 (W.D.Ark.1989). The Court finds that such is not the case.

■ The employer-employee relationship is an absolute prerequisite to Jones Act liability. *Stamoulos v. Howland Panama S.A.*, 610 F.Supp. 454, 456 (E.D.La.1985).[5] However, the Supreme Court has effectively foreclosed any argument that misrepresentations in an application for employment might void the necessary employment relation. In interpreting the Federal Employers' Liability Act, the Court has ruled that "the status of employees who become such through [fraud that is not 'abhorrent to public policy'], although possibly subject to termination through rescission of the contract of employment, must be recognized for purposes of suits under the Act."[6]

The essential purpose of the Jones Act was to make the provisions of the Federal Employers' Liability Act applicable to seamen. *See Pacific S.S. Co. v. Peterson*, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220 (1928). To the extent that the Jones Act differs from the F.E.L.A., those differences are to be resolved in favor of the seaman. *See* 1(b) *Benedict on Admiralty* § 2 at 1–8 and

---

**3.** In the months following that deposition, but preceding Mr. Barker's supplementation of his responses to interrogatories, Mr. Barker signed several pleadings, none of which contains representations that can be shown to be untrue according to his knowledge at the time. It appears to the Court that after Mr. Reed's deposition in late April, 1991, Mr. Barker chose his words with great care specifically for the purpose of avoiding Rule 11 liability. For this, of course, he cannot be faulted.

**4.** *See* § II(B), *infra*.

**5.** *Accord Spinks v. Chevron*, 507 F.2d 216 (5th Cir.1975).

**6.** *Still v. Norfolk & Western Ry.*, 368 U.S. 35, 45, 82 S.Ct. 148, 154, 7 L.Ed.2d 103 (1961). It is worthy of note that in *Minneapolis, St. Paul Ry. v. Rock*, 279 U.S. 410, 49 S.Ct. 363, 73 L.Ed. 766 (1929), the Court had barred a railway worker from suing under F.E.L.A. because of his fraudulently substituting a stand-in for his pre-employment physical exam. *Still* effectively reversed *Rock*, limiting *Rock* to its precise facts. 368 U.S. at 45, 82 S.Ct. at 154.

1–9 (1991).[7] Consequently, it is settled jurisprudence that one who suffers injury "in the course of his 'employment' as a seaman, within the ordinary meaning of those words, is not barred from suit under the Jones Act because he conceals a material fact in applying for employment." *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 530 (9th Cir.1962).[8]

■■■ Moreover, with respect to misrepresentations committed during litigation, it cannot be said that these vitiate a cause of action by their own force. Undoubtedly, the Court has the power to dismiss an action as a sanction for a party's misrepresentations.[9] Moreover, evidence of the party's misrepresentations can—and in this case, apparently did—destroy that party's credibility at trial.[10] However, the Court is not bound as a matter of law to invoke its power to dismiss, and Iowa Marine has submitted no authority for the proposition that a litigant can ever have zero credibility as a matter of law.[11] Thus, there was no basis in law for an inevitable dismissal, and in light of the Court's decision not to dismiss, a jury trial was still required. Accordingly, Mr. Barker was not obliged to dismiss, and cannot be penalized for failing to do so.[12]

## B. 28 U.S.C. § 1927

■■■ Under this statute, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." The essence of this provision is that liability attaches to bad faith attorney conduct that "force[s] the court to conduct unnecessary proceedings." Solovy, Kaster, Hirsch, & Thompson, *Sanctions in Federal Litigation* § 3.03 at 3–5 to 3–6 (1991).[13] The quintessential violation of § 1927 consists of filing frivolous motions. *See, e.g., In re Ginther*, 791 F.2d 1151, 1154–5 (5th Cir.1986) (affirming $26,000 sanction im-

---

**7.** *Accord Cortes v. Baltimore Insular Line, Inc.*, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932).

**8.** *Accord Omar v. Sea-land Service, Inc.*, 813 F.2d 986, 989 (9th Cir.1987). This does not affect the Court's earlier ruling on the unavailability of maintenance and cure due to misrepresentation. That doctrine arises under general maritime law and is not subject to the statutory interpretation set out above.

**9.** *See* Cogan, *The Inherent Power and Due Process Models: Sanctions in the Fifth Circuit*, 42 Sw.L.J. 1011 (1989).

**10.** The Court recognizes that failure to prevail on the merits does not in itself prove, or even necessarily contribute to proving, sanctionable conduct. *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1241 (10th Cir.1988). Some courts have held, however, that failure to prevail is a prerequisite to recovery of attorney fees under the inherent power. *See id.* at 1241–42. Others courts impose fees on bad-faith prevailing parties as well. *See Lipsig v. National Student Mktg. Corp.*, 663 F.2d 178, 182 (D.C.Cir. 1980); *In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir.1985). Because the issue regarding such a prerequisite is not before the Court, this opinion makes no ruling upon it.

**11.** *But see* Note, *Libel Proof Plaintiffs—Rabble Without a Cause*, 67 B.U.L.Rev. 993, 994 (1987) (noting some jurisdictions' position that a person's reputation can be so severely damaged as to prevent any defamation award to that person as a matter of law); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066 (5th Cir.1987) (noting the libel-proof plaintiff doctrine without ruling upon it and holding that a jury question was created by the plaintiffs' claims that their reputations had improved in the years following their criminal convictions). Because the movant did not present authority to this effect, and because the facts of this case do not squarely present the issue, the Court makes no ruling upon this point.

**12.** It is important to note that, even though the Court does find bad faith on the part of Mr. Barker, bad faith alone does not give rise to Rule 11 liability. The bad faith must be combined with a signature on a document filed with the court and the document must operate in furtherance of the attorney's bad faith.

**13.** *See Westinghouse Elec. Corp. v. N.L.R.B.*, 809 F.2d 419, 425 (7th Cir.1987) (deliberate flouting of court's rules regarding length and format of briefs warranted § 1927 sanctions due to the Court's time needlessly lost in considering two sets of briefs). *See also* Josselyn, *The Song of the Sirens—Sanctioning Lawyers under 28 U.S.C. § 1927*, 31 B.C.L.Rev. 477 (1990) (circuit-by-circuit analysis of § 1927 standards); Annotation, *What Conduct Constitutes Multiplying Proceedings Unreasonably and Vexatiously so as to Warrant Imposition of Liability on Counsel under 28 U.S.C. § 1927 for Excess Costs, Expenses, and Attorney Fees*, 81 A.L.R.Fed. 36 (1987) (survey of all federal jurisdictions).

posed for filing frivolous bankruptcy motion).[14] Because § 1927 is penal in nature, the scope of its liability should be narrowly construed. *Hagerty v. Succession of Clement,* 749 F.2d 217, 222 (5th Cir.1984), *cert. denied,* 474 U.S. 968, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985).[15] Here, the Court was in no way affected, except by the scheduled motion to compel, which never took place because Barker complied with his duty to supplement on the day before it was to be held.[16] Accordingly, the Court finds no liability under this statute.[17]

### C. Inherent Power

■ Under Fed.R.Civ.P. Rule 26(e)(2), a party[18] is under a duty "seasonably to amend a prior response if the party obtains information upon the basis of which (A) the party knows that the response was incorrect when made...." Moreover, under Rule 26(e)(3), a duty to supplement responses "may be imposed by ... agreement of the parties...." As the facts listed above indicate, both of these provisions apply here. Because no other rule directly governs this conduct, the sanction, if any, must be imposed under the inherent power of the court.[19]

"For a party to sit idly by, knowing that a previous answer he has given in response to discovery is no longer truthful in the light of his present information, is intolerable." Wright & Miller, *Federal Practice and Procedure* § 2048 at 320–21 (1970). Such conduct is "inconsistent with the purpose of the rules to avoid surprise and it is inconsistent with the standards of conduct that one expects in a learned and honorable profession." *Id.* Thus, the question arises whether this conduct, though reprehensible, is sanctionable under the inherent power of the court. However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. Nasco, Inc.,* — U.S. —, ——–——, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991). Accordingly, the Court deems it appropriate to review the law governing sanctions under the inherent power.

■ Inherent power sanctions of attorneys fees and other costs may properly be assessed against a party who "act[s] in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1973).[20] Violation of a rule can establish the requisite bad faith to warrant such sanctions.[21] Specifically, the Fifth Circuit has ruled that violation of Fed.R.Civ.P. 26(e) is subject to some form

14. *See also McGoldrick Oil Co. v. Campbell, Athey & Zukowski,* 793 F.2d 649 (5th Cir.1986) (upholding § 1927 sanctions where counsel filed meritless complaint that neither counsel nor client intended to pursue).

15. *See also Manax v. McNamara,* 842 F.2d 808, 814 (5th Cir.1988) (affirming district court's refusal to impose § 1927 sanctions for filing of meritless motion absent reckless or improper purpose).

16. It is not the Court's intention to approve of such conduct, or to indicate that it cannot give rise to liability under the statute. In particular, had the Court cleared its calendar of another matter of importance to accommodate the Motion to Compel, the ruling on this point might well have been different.

17. While Rule 11 and 28 U.S.C. § 1927 were the only grounds for sanctions asserted by Iowa Marine, sanctions under the inherent power of the Court may be imposed *sua sponte. Link v. Wabash R.R.,* 370 U.S. 626, 630–32, 82 S.Ct. 1386, 1388–90, 8 L.Ed.2d 734 (1962). For the reasons set out below, the Court elects to do so.

18. "Though the rule [26(e) ] refers to the 'party' as the one who 'knows,' it is apparent that knowledge of his lawyer must be regarded as knowledge of the party for this purpose, as it is for purposes of discovery generally." Wright & Miller, *Federal Practice and Procedure* § 2049 at 323 (1970). Likewise, for purposes of complying with that rule, the attorney's duty is the same as the party's. *Id.* Moreover, the Court finds for the reasons set out above that Mr. Barker had actual knowledge of the need to supplement as of Mr. Reed's deposition.

19. *See* Wright & Miller, *Federal Practice and Procedure* § 2050 at 325 (1970).

20. *Accord Chambers v. Nasco, Inc.,* — U.S. ——, ——, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991); *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 258–259, 95 S.Ct. 1612, 1622–1623, 44 L.Ed.2d 141 (1975).

21. *See* Solovy, Kaster, Hirsch, & Thompson, *Sanctions in Federal Litigation* § 4.03 at 4–9 (1991).

of inherent power sanction, not least because no other sanction specifically applies. *Bradley v. United States*, 866 F.2d 120, 124 n. 6 (5th Cir.1989).[22]

■ The *Bradley* opinion left open the question whether the sanction it applied was implicitly authorized by Fed.R.Civ.P. 26(e), and merely given form by the inherent power, or an inherent power sanction independent of any rule.[23] *Compare Bradley*, 866 F.2d at 124 n. 6. (noting alternative bases for its holding) *with id.* at 128 ("on remand to the district court, pursuant to its inherent power to enforce its own rules, *see supra* note 6, should impose sanctions upon the government for the breach of its duties under the rules."). However, "[i]n any case, the power of a trial court to impose sanctions for rule 26(e)(1) violations has been affirmed repeatedly by th[e Fifth Cir-

cuit] and others." [24] *Bradley*, 866 F.2d at 124 n. 6.[25]

■ Taking the jurisprudence as a whole, the Court finds that "[f]ew would question a court's inherent power to discipline breaches of Rule 26(e), even in the absence of a court order." *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir.1980).[26] Accordingly, the Court deems it appropriate to apply inherent power sanctions to remedy the breach of Fed.R.Civ.P. 26(e)(2) and (3). *See Bradley*, 866 F.2d at 128 (noting with approval the D.C. Circuit's affirmation of an award of monetary sanctions for violation of Rule 26(e)(2) in *Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686, 689–90 (D.C.Cir.1987)).[27]

■ In light of this jurisprudence and the circumstances of the matter at bar, the Court finds that Mr. Barker acted in bad faith [28] in his failure to supplement his re-

---

**22.** *Accord Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 764 (5th Cir.1989) (granting sanction of exclusion for breach of Rule 26(e)(1)); *Outley v. City of New York*, 837 F.2d 587 (2d Cir.1988); Wright & Miller, *Federal Practice and Procedure* § 2050 at 325 (1970).

**23.** The Court recognizes that although no other rule or statute specifies a penalty for the conduct at issue, this is not a prerequisite to the exercise of the inherent power to sanction. *Chambers v. Nasco, Inc.*, — U.S. —, —, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991). *See also id.* at —, 111 S.Ct. at 2135 ("the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."); *id.* at —, 111 S.Ct. at 2134 ("whereas each of the other [sanctioning] mechanisms reaches only certain individuals or conduct, the inherent power must continue to exist to fill in the interstices."); *but see id.* at —, 111 S.Ct. at 2136 ("when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the rules, the court ordinarily should rely on the rules rather than the inherent power.").

**24.** *See Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 234–35 (5th Cir.1981; *Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir. 1988); *Alimenta (U.S.A.), Inc. v. Anheuser–Busch Cos.*, 803 F.2d 1160, 1163 (11th Cir.1986). *See also Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir.1986) (unreasonable delay can support inherent power sanctions). *Compare Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir.1984) (inherent power sanction imposed for six week delay upheld as within district court's discretion), *cert. denied*, 470 U.S. 1007, 105 S.Ct. 1368, 84 L.Ed.2d 387 (1985) *with Schilling v. Commission*, 805

F.2d 272, 275 (7th Cir.1986) (litigant neglected case for one month; inherent power sanction of dismissal reversed), *cert. denied*, 470 U.S. 1007, 105 S.Ct. 1368, 84 L.Ed.2d 387 (1985).

**25.** The Fifth Circuit generally applies the "abuse of discretion" standard of review in such cases. *See Batson v. Neal Spelce Assocs., Inc.*, 805 F.2d 546 (5th Cir.1986).

**26.** *See Freund v. Fleetwood Enters.*, 956 F.2d 354, 357–58 (1st Cir.1992); *Buffington v. Baltimore County*, 913 F.2d 113, 135 (4th Cir.1990). One of these few is Behar, *The Misuse of Inherent Powers When Imposing Sanctions for Discovery Abuse: The Exclusivity of Rule 37*, 9 Cardozo L.Rev. 1779 (1988). The general argument put forward in that article does not apply well, however, to the situation at bar. In particular, it lacks a coherent theory to explain how Rule 37 sanctions could redress Rule 26(e) violations. In any event, the Fifth Circuit's ruling to the contrary of Behar's position forecloses this avenue of inquiry.

**27.** *See also Roadway Express Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (establishing personal liability of attorneys for inherent power sanctions); Solovy, Kaster, Hirsch, & Thompson, *Sanctions in Federal Litigation* § 4.03 at 4–6 (1991) ("*Roadway Express* consistently has been cited for the proposition that a court can employ its inherent power to sanction for bad-faith instigation and conduct of litigation.").

**28.** Subjective attorney bad faith is established by "[k]nowing or reckless" abusive conduct.

sponses to interrogatories for three and one-half months after agreeing to do so, and after having learned of the facts that activated his duty to do so.[29] An enlightening anecdote on this point is Mr. Barker's action in waiting until the day before the scheduled Motion to Compel to discharge his duty to supplement, some fourteen weeks after that duty arose. Apparently Mr. Barker believed, with good reason, that the Magistrate Judge would have looked unfavorably upon Mr. Barker's delays.[30] Moreover, the nearness of trial at that point worked substantial prejudice to the defense. The Court therefore sanctions Mr. Barker under its inherent power in order to "vindicate judicial authority without resort to the more drastic sanctions available for contempt of court and [to make] the prevailing party whole for expenses caused by [its] opponent's obstinacy." *Hutto v. Finney*, 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2573 n. 14, 57 L.Ed.2d 522 (1978).[31]

Great care and discretion are required in imposing inherent power sanctions. An essential component of that discretion is "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. Nasco, Inc.*, —— U.S. ——, —— – ——, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991) (citation omitted). In order to serve the compensatory objective of *Hutto*, imposition of attorney's fees is warranted.[32] Likewise, expenses incurred in the investigations made necessary by Mr. Barker's intransigence serve this purpose and are appropriate. *See Bradley v. United States*, 866 F.2d 120, 124 & n. 13

---

*See MGIC Indem. Co. v. Moore*, 952 F.2d 1120, 1122 (9th Cir.1991). The test for objective bad faith is satisfied by conduct that manifests "either intentional or reckless disregard of the attorney's duties to the court." *See Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir.1987) (*en banc*). For the reasons set out in this opinion, the Court finds both tests to be clearly satisfied. The following passage in one of Mr. Barker's pleadings is typical of his attitude toward the litigation generally: "Plaintiff does admit that there were many nondisclosures relating to plaintiff's prior work history and physical condition, however, *only some of these nondisclosures were intentional,* and plaintiff submits that none were directly causally related to his instant claims." Plaintiff's Response to Defendant's Motion to Dismiss or for Summary Judgment at 2 (emphasis added). The Court notes that this pleading was filed on July 26, 1992, nearly three months after Mr. Barker learned about the misrepresentations and agreed to remedy them. Mr. Barker's casual attitude toward his client's "non-disclosure" (and resulting false responses to interrogatories), and Mr. Barker's cavalier attitude toward his duty to the Court and opposing counsel under the rules are evident in this quotation.

**29.** This was evident in the hearing that the Court held on the sanctions motion. Mr. Barker's attitude toward opposing counsel and toward the Court in that hearing is reflected in the first line of his memorandum in opposition to sanctions: *"The Shelby Reed vs. Iowa Marine Story.* The story is truly an interesting one, although certainly the court grew tired of it and became bored with it during the protracted trial." Memorandum in Opposition to Defendant's Motion for Rule 11 Sanctions at 1.

**30.** This circumstance speaks directly to subjective bad faith. The Court is satisfied that Mr.

Barker only supplemented the responses, even in a limited manner, due to the prospect of Court action, including sanctions. Taken together with the history of this litigation and Mr. Barker's actions throughout it, this demonstrates an intentional disregard of his obligations to the Court and to opposing counsel under Rule 26(e)(2) and (3).

**31.** *See also Batson v. Neal Spelce Assocs., Inc.*, 805 F.2d 546, 551 (5th Cir.1986) (awarding over $30,000 for, *inter alia,* dilatory discovery tactics). The Court notes that while John H. Gibson, Jr. was Mr. Reed's attorney at trial, and had other involvement in this litigation, the Court finds no evidence that he contributed in any way to the bad faith conduct described herein. Mr. Gibson had no relevant involvement with this case during the crucial period, namely May 1–August 13, 1991.

**32.** *See Chambers*, —— U.S. at ——, 111 S.Ct. at 2133 ("As we recognized in *Roadway Express[, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)], outright dismissal of a lawsuit, which we had upheld in *Link [v. Wabash R.R.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)], is a particularly severe sanction, yet is within the court's discretion. 447 U.S. at 765, 100 S.Ct. at 2463. Consequently, the 'less severe sanction' of an assessment of attorney's fees is undoubtedly within a court's inherent power as well. *Ibid.").* *See also Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 875 (5th Cir.1988) (*en banc*) ("pursuant to its inherent power, a district court may award reasonable attorney's fees to the prevailing party when the losing party has acted in bad faith in actions that led to the lawsuit or in the conduct of the litigation.") (citations omitted).

**656**

(5th Cir.1989). Thus, the Court finds that this sanction, while punitive in nature, will have a desirable compensatory effect in remedying part of the harm done to Iowa Marine by Mr. Barker's dereliction.

Accordingly,

IT IS ORDERED that

(1) The Motion for Sanctions of defendant Iowa Marine Repair Corp. be and is hereby GRANTED;

(2) The Court holds Richard H. Barker, IV, liable under its inherent power for all attorney's fees, costs, and expenses reasonably incurred by Iowa Marine Repair Corp. between May 1 and August 13, 1991, inclusive, in investigating the previous litigation and personal injury history of plaintiff Shelby Reed, and in litigating both its motion for summary judgment and its motion to compel. The Court also holds Richard H. Barker, IV liable under its inherent power for all attorney's fees and costs reasonably incurred by Iowa Marine Repair Corp. in litigating the Motion for Sanctions addressed by this opinion, and

(3) ORDER OF REFERENCE TO U.S. MAGISTRATE: IT IS ORDERED that this cause is REFERRED to United States Magistrate Moore, Magistrate Judge for the Eastern District of Louisiana, to hear and determine the issue of the amount of attorney's fees, costs, and expenses to which Iowa Marine is entitled as a result of this Court's order in (2), above. The Magistrate Judge is directed to hear this matter within forty-five (45) days from the date of entry of this Order and to file a Report including Findings and Recommendations in accordance with 28 U.S.C. § 636 and Fed.R.Civ.P. 53.

ALLOTTED & REFERRED TO U.S. MAGISTRATE MOORE.

