**Debra FRITTER and Thomas Fritter, Plaintiffs,**

v.

**DAFINA, INC., Dafina New York, Inc., And DAL Specialities, Inc., each Individually and d/b/a IMR Powder Company, Expro Chemical Products, Inc., and Lancaster Container, Inc., Defendants.**

No. 95–CV–874.

United States District Court, N.D. New York.

Aug. 18, 1998.

**216**

Bond, Schoeneck & King, LLP, Albany, NY (John M. Freyer, Arthur J. Siegel, of counsel), James P. Costello, Chicago, IL, for Plaintiffs.

Ahmuty, Demers & McManus, Albertson, NY (Thomas M. Desimone, of counsel) for IMR Powder Co.

Michael J. Hutter, Albany, NY (Michael J. Hutter, of counsel), for Expro Chemical Products, Inc.

Faegre & Benson Law Firm, Minneapolis, NM (Martin Nicholas Burke, of counsel), for Expro Chemical Products, Inc.

Friedman, Hirschen, Miller Coughlin & Campito, P.C., Schenectady, NY (Jeffrey N. Miller, of counsel), for Lancaster Container, Inc.

### MEMORANDUM–DECISION & ORDER

HURD, United States Magistrate Judge.

Defendant Expro Chemical Products, Inc. ("Expro") moves for an order allowing its designated expert, Leo R. Gizzi ("Gizzi"), to testify at trial concerning testing he conducted in June and July 1998 and allowing the other parties to depose Gizzi with respect to that testing. Plaintiffs oppose the motion. Expro submitted a reply in further support of the motion.

Expro designated Gizzi as an expert witness on April 10, 1998. Expro submitted Gizzi's expert report, required by Federal Rule of Civil Procedure 26, on April 16, 1998. By Order dated May 26, 1998 (the "May 26 Order"), Gizzi was permitted as an expert and his expert report was accepted. The May 26 Order prohibited any further expert designations or reports. The background and rationale for permitting the expert designation and report is contained in the May 26 Order, familiarity with which is assumed.

Plaintiff deposed Gizzi on July 1, 1998. At that time, Expro presented the results of tests performed by Gizzi in June 1998. The plaintiff declined any interrogation of Gizzi regarding the June tests, viewing the testing as contrary to the May 26 Order. Gizzi conducted further testing in July 1998. In addition to the test data from June and July 1998, Expro proffers photographs and videotapes taken during that testing.

Expro argues in support of its motion that the testing performed by Gizzi in June and July of 1998 merely confirms the opinions set forth in the expert report. More specifically, Expro asserts that Gizzi disagrees with the conclusions plaintiffs' expert drew from his photographs. Expro explains that after completion of the expert report, Gizzi suggested (and Expro approved) further testing and experimentation which would be photographed and videotaped, to visually demonstrate and support Gizzi's opinions. Expro argues that there was insufficient time prior to submission of the report to perform the additional testing. Expro further suggests that to do this additional testing in the face of plaintiffs' anticipated motion to strike the expert testimony and report would have resulted in unnecessary expenditure of funds, should the motion be granted. Thus, plans as to the testing in question were not solidified until after the May 26 Order. The photographs purportedly demonstrate that

the irregular shape of the propellant is typical in such products, and not atypical to the particular lot involved in the accident which is the basis for Gizzi's opinion that the irregularity of propellant granules played no part in the accident. The videotape purportedly demonstrates how plaintiffs' tumbling and clinging tests were misleading and of no scientific value.

Plaintiffs argue that permitting testimony about this testing would result in the interjection of new data and experimentation, in contravention of the May 26 Order and the Federal Rules of Civil Procedure.

The discovery rules require the expert report to include "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions." Fed.R.Civ.P. 26(a)(2)(B). The data, photographs, and videotape, if confirming Gizzi's opinions, clearly fall within the ambit of information required to be included in the expert report. Accordingly, testimony regarding this testing may be inadmissible depending upon the "importance of the testimony to the case, the prejudice to the party inconvenienced, and the administrative difficulty which the court" faces. *Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir. 1988); *see also Softel v. Dragon Med. & Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir.1997) (consider explanation, importance, prejudice, possibility of continuance), *cert. denied*, —— U.S. ——, 118 S.Ct. 1300, 140 L.Ed.2d 466 (1998).

Gizzi reached his opinions originally based upon a review of plaintiffs' expert report. Those opinions have not changed as a result of the testing performed after submission of Expro's expert report. Thus, the testing is unnecessary to support Gizzi's opinions and is relatively unimportant. Moreover, it is not at all clear how a videotape of Gizzi's tumbling and clinging experiments would help a jury understand static charge level differences, upon which Gizzi reported that he based his opinion. Static charge level data from the expert reports can easily be compared with the level which Gizzi opines would be required to ignite the product. Any additional data generated by the June and July testing would be bolstering, not merely confirmatory.

It is also unclear how watching containers being shaken or tumbled, then placed on a meter, demonstrates that plaintiffs' expert's tumbling and clinging experiments were misleading and of no scientific value. Nor is it crystal clear why photographs of propellant granules, both regular and irregular, are needed to demonstrate Gizzi's opinion that the irregularity of propellant in the lot in question played no part in the accident.

As for inconvenience and administrative difficulty relating to preclusion, the pretrial proceedings in this action continue to vex those involved, not in small part due to Expro. While Expro has offered to permit depositions of Gizzi prior to the trial date, in order to prevent prejudice to plaintiffs, time should be permitted for their expert to perform additional testing to rebut testimony by Gizzi which was not included in the expert report. Only one month is insufficient time for plaintiffs to complete such tests. Any delay in the trial date, which has been set for quite some time, would considerably inconvenience the parties and the court. Accordingly, admission of the evidence would result in intolerable inconvenience to the plaintiffs and the court.

Expro's time and expense explanations for failure to include this information in the expert report are to no avail. Plaintiffs submitted their expert report on November 5, 1997. This report clearly sets forth their expert's opinion regarding the irregular shape of the propellant and the involvement of static charge in the accident. Due to Expro's default, it did not retain Gizzi as an expert witness until March 25, 1998. The testing currently in question was completed over a period of approximately two weeks. Thus, with the basis for plaintiffs' expert opinion known for several months prior, adequate time existed between Gizzi's retainer as an expert and the submission of the expert report on April 16, 1998. If necessary, Expro could have requested additional time to submit its expert report. It did not.

Additionally, as the product manufacturer Expro had access to samples of the product for testing since the inception of this litigation in June 1995. Expro had in-house expertise regarding the product, and no doubt ready access to other experts in the field. Expro knew from the beginning that this was potentially a very substantial case and could have retained an expert to complete this testing at any time, even prior to its default. Allowing cost considerations to delay performing the tests was "penny wise and pound foolish."

Further, every litigant who uses an expert witness faces the possibility of a preclusion motion. A motion to preclude expert testimony must necessarily be made after submission of the expert report. Justifying failure to perform testing prior to submission of the expert report based upon anticipation of a preclusion motion would negate the very purpose of the report. If this argument were valid, every party retaining an expert witness would wait to perform tests until after a determination of admissibility was made. Clearly, however, the tests and data underlying an expert's opinion must be known before a determination of admissibility can be made.

Based upon the foregoing, it is

ORDERED that defendant Expro's motion to permit the testimony of Gizzi regarding testing performed after submission of its expert report is DENIED.

IT IS SO ORDERED.