574 So.2d 131 (1991)
M. David SIMS, M.D., Petitioner,
v.
Mary BROWN, Respondent.
Christian KEEDY, M.D., Petitioner,
v.
Mary BROWN, Respondent.
SOUTH MIAMI HOSPITAL FOUNDATION, INC., Petitioner,
v.
Mary BROWN, Respondent.
Nos. 73949, 73964 and 73965.
Supreme Court of Florida.
January 18, 1991.
*132 Pamela Beckham of Carey, Dwyer, Eckhart, Mason, Spring & Beckham, P.A., Miami, for petitioner, M. David Sims, M.D.
Debra J. Snow and Robert M. Klein of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for petitioner, Christian Keedy, M.D.
James E. Tribble and Paul R. Larkin, Jr. of Blackwell, Walker, Fascell & Hoehl, Miami, for petitioner, South Miami Hosp. Foundation, Inc.
Paul Siegel and John L. Zavertnik of Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A., Miami, for respondent.
McDONALD, Justice.
We granted review of Brown v. Sims, 538 So.2d 901 (Fla. 3d DCA 1989), because of claimed conflict with decisions of this Court or of other district courts of appeal.[1] We quash Brown in part and remand this case to the district court.
Brown sued Sims, a gynecologist, Keedy, a neurosurgeon, and South Miami Hospital, claiming that the defendants' negligence caused a stroke suffered during or shortly after an operation performed by Sims to remove an ovarian cyst. At trial the court granted Sims a directed verdict while Keedy and South Miami Hospital secured a favorable jury verdict. The district court vacated all defendants' judgments and ordered a new trial.
Sims' claim of conflict rests on his assertion that the opinion under review conflicts with Chenoweth v. Kemp, 396 So.2d 1122 (Fla. 1981). Chenoweth is discussed in the district court's opinion, and we now conclude that that opinion is, in fact, consistent, and not in conflict, with Chenoweth. The district court held that excluding the testimony of Dr. Cohen, a neurologist, coupled with the existence of a genuine issue of fact as to Sims' negligence, precluded a directed verdict for him. Although Cohen did not have the qualifications to testify to any defect in Sims' surgical procedures, Brown's claim of negligence was not predicated on the negligent performance of the operation, but primarily on the claim that the preoperative histories and physicals were inadequate. As to these issues, Cohen had the requisite expertise to testify. The district court, applying *133 Chenoweth properly, found that his testimony should have been received.
We may or may not have concluded that the directed verdict for Sims was proper, but we find no conflict in the district court's decision to vest jurisdiction to review Sims' claim to this effect. Thus, we vacate our order granting review insofar as Sims is concerned.
In reversing the jury verdicts for Keedy and South Miami, however, the decision under review conflicts with other decisions and, in our view, is erroneous.
At Sims' request, Keedy performed a preoperative neurological examination of Brown. He cleared her for surgery, but did not document his examination or write a report until several days after the operation. Dr. Albanes, a staff physician for the hospital, also performed a preoperative examination of Brown and cleared her for surgery.[2] Sims removed the ovarian cyst, and Brown suffered a stroke. Brown contended that, had a proper preoperative examination been conducted, a condition which likely was a factor in the stroke would have been discovered and corrected before surgery.
The trial judge disallowed putting into evidence a 1979 report of the Joint Commission on Accreditation of Hospitals (JCAH) wherein the commission found a specific deficiency in the hospital's recording of "an adequate current history and physical examination." The district court found this to be reversible error. One reason for the trial judge's rejection of this report was its remoteness in time. A subsequent JCAH report, but one which preceded the alleged negligence in this case, failed to mention any deficiency in the record keeping of the hospital. To be relevant, particularly if remote in time, a prior dangerous condition or negligent cause of conduct must be shown to continue uncorrected up to the time of the act sued upon. Gallagher v. L.K. Restaurant & Motels, Inc., 481 So.2d 562 (Fla. 5th DCA 1986). Brown has failed to show this and the decision under review conflicts with Gallagher.
The trial judge also found this report irrelevant or if relevant more confusing than helpful. When the district court found its exclusion reversible error, it did so without explicitly finding that the trial judge abused his discretion. In Trees v. K-Mart Corp., 467 So.2d 401, 403 (Fla. 4th DCA), review denied, 479 So.2d 119 (Fla. 1985), the Fourth District Court of Appeal stated: "The determination of relevancy is within the discretion of the trial court. Where a trial court has weighed probative value against prejudicial impact before reaching its decision to admit or exclude evidence, an appellate court will not overturn that decision absent a clear abuse of discretion." (Citations omitted.)
We agree that the foregoing statement is the correct standard to review a ruling on the admissibility of evidence under section 90.403, Florida Statutes (1989). The weighing of relevance versus prejudice or confusion is best performed by the trial judge who is present and best able to compare the two. In this case the relevance of the alleged deficiencies in the hospital's record keeping is even more obscure than the claim that Keedy's report should have been made in writing before Sims performed the operation.[3] The alleged cause of injury here was the negligent clearance for, and the subsequent trauma caused by, the operation performed by Sims.
The chief object in introducing evidence is to secure a rational ascertainment of facts; therefore facts should not be submitted to the jury unless they are logically relevant to the issues. A fact in a cause must be both logically and legally *134 relevant, for even logical relevancy does not in all cases render proposed evidence admissible. A fact which in connection with other facts, renders probable the existence of a fact in issue, should still be rejected where, under the circumstances of the case, it is essentially misleading or too remote.
Atlantic Coast Line R. v. Campbell, 104 Fla. 274, 282-83, 139 So. 886, 890 (1932).
The second ground for reversal by the district court was the exclusion of a manual of the Joint Commission on Accreditation of Hospitals. The trial judge was willing to admit the standards, but not the interpretive commentaries thereon. He sustained objections both on relevancy and hearsay grounds. Brown chose an "all or nothing at all" position, seeking to use the manual to present issues of medical record keeping by the hospital. In reversing the trial judge's exclusion the district court disagreed with the trial judge's conclusions on relevance and that the interpretations were hearsay and apparently overlooked the fact that Brown's two medical experts testified essentially to the same matters.
To be legally relevant, evidence must pass the tests of materiality (bearing on a fact to be proved), competency (being testified to by one in a position to know), and legal relevancy (having a tendency to make the fact more or less probable) and must not be excluded for other countervailing reasons. Pearson, Ungarbling Relevancy, Fla.Bar J. 45 (1990). The trial judge concluded that the interpretations were irrelevant to any legitimate issue in this case. As it did in reference to the report, the district court must find an abuse of discretion in the trial judge's rejecting this evidence before reversing. It failed to do so.
In excluding the manual the trial judge stated: "Well, you have all sorts of testimony as to what is required for a patient coming in with respect to examinations and the histories. This is no different than what anybody has testified to as far as I know." Even if wrongfully excluded, the exclusion of cumulative testimony is not an adequate basis for vacating a jury verdict. Carlton v. King, 51 Fla. 158, 40 So. 191 (1906); Farmer v. B.F. Goodrich Co., 252 So.2d 593 (Fla. 2d DCA), cert. denied, 255 So.2d 686 (Fla. 1971).
Our review of the record discloses that good and valid grounds existed for the trial judge to reject the evidence discussed above. At the very least no abuse of the trial judge's discretion was shown.[4] Hence, the district court erred in vacating the verdicts entered for Keedy and South Miami Hospital. Accordingly, the opinion as it relates to Brown's claims against Keedy and South Miami Hospital is quashed and the cause is remanded to the Third District Court of Appeal with instructions to reinstate these defendants' verdicts and for any other necessary procedures consistent with this opinion.
As noted earlier, our order accepting jurisdiction on Sims' claim is rescinded, and we do not disturb the district court's opinion on this claim.
It is so ordered.
SHAW, C.J., and OVERTON and KOGAN, JJ., concur.
GRIMES, J., concurs with an opinion.
EHRLICH, Senior Justice, concurs in part and dissents in part with an opinion.
BARKETT, J., concurs in part and dissents in part.
NO MOTION FOR REHEARING WILL BE ALLOWED.
GRIMES, Justice, concurring.
I believe the so-called interpretations were part of the manual of the Joint Commission *135 on Accreditation of Hospitals and, as such, admissible as an industry-wide standard. However, the interpretations were being offered simply to show that the medical record should document a current thorough physical examination before surgery. This matter was not really in issue, and there was plenty of other evidence to this effect. Thus, the exclusion of the interpretations was no more than harmless error.
EHRLICH, Senior Justice, concurring in part and dissenting in part.
I agree with the majority as to Dr. Keedy and South Miami Hospital, but I dissent from the holding that there is no conflict between the opinion of the court below and a case from this Court, Chenoweth v. Kemp, 396 So.2d 1122 (Fla. 1981), with respect to Dr. Sims. It is clear to me that there is express and direct conflict and that we should keep jurisdiction and resolve the conflict.
In this case, plaintiff sought to offer the testimony of a Dr. Cohen, a neurologist, who was prepared to testify that Dr. Sims failed to conduct a thorough, presurgical, physical examination. Dr. Cohen testified that he regularly did presurgical physicals for neurological and gynecological patients. In excluding his testimony, the trial court, according to the opinion of the district court of appeal, made an express finding that Dr. Cohen did not "`possess sufficient training, experience and knowledge as a result of practice or teaching in the obstetrics and gynecologic specialty and that his experience does not qualify him to testify about Dr. Sims.'" Brown v. Sims, 538 So.2d 901, 904 (Fla. 3d DCA 1989).
The court below then went on to say (albeit erroneously): "In an almost identical situation the Florida supreme court held that a neurologist was competent to testify as to matters of a gynecologist's presurgical standard of medical care." Id. at 904 (citing Chenoweth).
In Chenoweth, the plaintiff sued the physicians and hospital following her hysterectomy. Mrs. Chenoweth suffered damage in the ulnar region of her left arm, which she claimed was due to some negligence by one or more of the doctors in the operating room or at some later point in the hospitalization. Plaintiffs' theory was that Mrs. Chenoweth was incorrectly positioned and secured on the operating table, and offered the testimony of two neurosurgeons as to whether it was below the standard of care for one of the doctors, a specialist in obstetrics-gynecology, or a second doctor, a board certified anesthesiologist, to allow a compression injury to the ulnar nerve to occur during the course of an operation, or not to use some type of padding to protect the ulnar nerve. The trial court, after studying section 768.45(2), Florida Statutes (Supp. 1976), refused to allow the two neurosurgeons to testify. This Court said:
The record is clear that the court made this determination, not upon any finding that they did not possess sufficient training, experience, or knowledge to provide such expert testimony, as allowed under paragraph (c) of section 768.45(2), but solely because they were neither specialists nor board certified in either gynecology or anesthesiology. The provisions of paragraph (c) clearly require the court to make the determination that the proffered witnesses do not possess the training, experience, or knowledge to testify on the standard of care for the alleged acts in question  here the positioning of the patient on the operating table. The trial court may not always avoid this often difficult determination by resting solely on the fact that a proffered witness does not practice the same specialty as the defendants. While it is clear that the proffered witnesses would not have been competent to testify on certain acts performed by the appellees, such as the hysterectomy performed by Kemp or the anesthetizing performed by Szmukler, it is not at all clear that the two neurosurgeons were qualified under the statute to testify concerning the positioning of the patient on the operating table and the effect of that positioning. The standard of care for this portion of the procedure may well be, as claimed by one of the neurosurgeons, the same for all surgeons relative to protection of the ulnar *136 nerve from compression or other injury. We find the exclusion of these witnesses, under the circumstances, was error. However, we find it was harmless error, since it was not disputed that if the ulnar nerve injury was caused on the operating table, such would constitute a breach of the standard of care for both Kemp and Szmukler.
Chenoweth, 396 So.2d at 1124-25 (footnote omitted).
If this error had not been harmless in that context, this Court would have remanded the case to the trial court to make such a determination.
Contrary to the opinion below, this Court did not hold that a neurologist was competent to testify as to the matter of a gynecologist's presurgical standard of medical care. In my view, this is clearly misapplication conflict, and this Court should address it.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
[2] The preoperative examination performed by Dr. Albanes was documented in the hospital records.
[3] The district court stated: "The real issue at trial here was not whether there was a failure to make and maintain a complete medical record of a thorough physical examination, but whether Dr. Keedy's failure to make a medical record was action that fell below the standard of care for a health care provider and whether that conduct proximately caused harm to Mrs. Brown." Brown v. Sims, 538 So.2d 901, 908 (Fla. 3d DCA 1989).
[4] Because of our ruling we need not discuss whether the interpretations of the JCAH manual were properly excluded on hearsay grounds. Such interpretations could be construed as out of court statements used to establish a material fact and, if so, would be hearsay. On the other hand, if it is shown that the interpretations were accepted by the hospital or industry wide as accepted standards, they may be introduced as evidence of a recognized standard of care. Relevance must be shown, hearsay or not.