699 So.2d 275 (1997)
Frederick ERWIN, Appellant,
v.
Richard TODD and Kristeen Todd, Appellees.
No. 96-2466.
District Court of Appeal of Florida, Fifth District.
August 22, 1997.
*276 Richard A. Sherman and Rosemary B. Wilder, of Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, and Alan L. Landsberg, of Alan L. Landsberg & Associates, Maitland, for Appellant.
H. Clay Parker of Parker, McGuire, Burke, Landerman & Parker, P.A., Orlando, for Appellees.
PETERSON, Judge.
Frederick Erwin, the defendant below, appeals from an order granting a new trial to Richard Todd and Kristeen Todd, the plaintiffs below, in their action to recover damages for personal injuries received by Richard in an automobile accident. We do not disturb the trial court's grant of a new trial in that we agree with the trial court's conclusion that it erred in overruling plaintiffs' evidentiary objections regarding the use of: (1) testimony by a physician as to the content of another doctor's medical records; and (2) the use of an article in a medical journal to bolster the testimony of an expert medical witness.
During the trial, plaintiffs' counsel objected to any reference of medical records of other health care providers being introduced through the testimony of defendant's medical expert, Dr. Urbach. Defense counsel argued that Dr. Urbach could testify as to such medical records based on section 90.704, Florida Statutes (1995). Section 90.704 provides:
90.704 Basis of opinion testimony by experts.The facts or data upon which an expert bases an opinion or inference may be those perceived by, or made known to, the expert at or before the trial. If the facts or data are of a type reasonably relied upon by experts in the subject to support the opinion expressed, the facts or data need not be admissible in evidence.
On proffer, Dr. Urbach stated that he performed a medical examination of Todd for the defense about three years after the accident, and that Todd's PIP carrier required Todd to undergo an examination by Dr. Zilioli about six months after the accident. Dr. Urbach noted that, during the earlier examination, Dr. Zilioli had found that Todd had a normal range of motion and he relied on these findings in forming his opinion. According *277 to Dr. Urbach, there can be no cervical sprain if one has a full range of motion.
Following this proffer, the court ruled that Dr. Urbach could be asked whether he had reviewed the earlier medical records of Todd and whether, based on his review of these records, Todd had a full range of motion six months after the accident. However, Dr. Urbach was not to testify as to any specific persons or the specific medical record that he relied on in forming his opinion and that the records themselves were inadmissible. The court specifically found that Dr. Zilioli's records were untrustworthy (hence inadmissible) because the medical examination was performed for an insurance company.
Dr. Urbach testified before the jury that he had examined Todd in September 1995 and that he had reviewed Todd's medical records. Dr. Urbach concluded that Todd had chronic neck and back complaints, and admitted there was evidence of minor disgenerative disc disease, but found no objective evidence of an injury to Todd's cervical or lumbar spine. Dr. Urbach then testified as follows:
Q. Based on your review of the medical recordswell, let me ask this: Based on your physical examination, did you feel the necessity for any further medical care or chiropractic treatment after September of 1995?
A. September of '95? No. When I saw him, no.
Q. Based on your review of the records, did you find facts or opinions that would indicate whether at some point chiropractic care should have been abandoned?
A. Well, there are records indicating normal motion in August of `93.

Q. Does it follow then at that point there was no need for further chiropractic care?

A. That's correct.

Q. Is that your opinion then within a reasonable degree of medical probability?
A. Well, that's what the records indicate, yes.
Q. Those records, are they of the type reasonably relied upon by you and other orthopedic surgeons in the field?
A. Yes.
Q. For how long did Dr. Vogt continue to treat Mr. Todd after the August 1993 records that indicate that there was no restriction of range of motion,?

A. After which date? After August of '93?

Q. After August of '93.

A. Let me take my glasses off, because I just have where he records physical exam. I may not have every visit he went. But there's a physical exam 9or exam of 9/14/93. He indicated his impairment rating was given 10/25/93.
Then I got to get on to the new records that came in. It appearsand I didn't break them down, but between February 19th, '93, January 28th, '94, it's sixty-four chiropractic manipulations and adjustments. And there's a period of time there's a seven-week gap. And he's treated again 3/22/94. Then a six-month gap. And treatment resumed 9/14/94. And there are eleven visits through 3/29/95, and then a four-and-a-half-month gap. And treatment again carried out 8/14/95. And then fifteen visits between that date and 11/25or correction 1/15/96....
(Emphasis added). Under section 90.704, an expert is generally permitted to express opinions which are based, at least in part, upon inadmissible information. Maklakiewicz v. Berton, 652 So.2d 1208 (Fla. 3d DCA 1995); Department of Corrections v. Williams, 549 So.2d 1071 (Fla. 5th DCA 1989); Riggins v. Mariner Boat Works, Inc., 545 So.2d 430 (Fla. 2d DCA 1989); Smithson v. VMS Realty, Inc., 536 So.2d 260 (Fla. 3d DCA 1988); Hungerford v. Mathews, 511 So.2d 1127 (Fla. 4th DCA 1987); Bunyak v. Clyde J. Yancey and Sons Dairy, Inc., 438 So.2d 891 (Fla. 2d DCA 1983), rev. denied, 447 So.2d 885 (Fla.1984). This rule is frequently used to permit doctors to base their medical opinions upon tests and laboratory reports which are not admitted into evidence. Riggins, 545 So.2d at 432. However, the expert may not merely be used as a conduit for the introduction of the otherwise inadmissible evidence. Maklakiewicz; Department of Corrections; Smithson; Hungerford; Bunyak. Here, the trial court specifically *278 ruled that Dr. Zilioli's medical records were inadmissible and that Dr. Urbach was not to refer to the specific contents of these records. Although Dr. Urbach did not mention Dr. Zilioli by name, the reference to the medical examination in August 1993 was to Dr. Zilioli's records. Dr. Zilioli's medical examination, performed only seven months after the accident, purportedly showed a normal range of motion. This supported the defense's theory that no injury resulted from the accident and was clearly prejudicial. Because Dr. Zilioli's medical records were inadmissible, the defense should not have been allowed to elicit this inadmissible evidence. See Maklakiewicz (caused remanded for a new trial in a wrongful death action where the trial court abused its discretion in permitting the sole defense expert witness to convey to the jury inadmissible hearsay statements); Smithson (new trial ordered in wrongful death action where defense expert was permitted to testify about inadmissible matters in the course of his direct examination); Bunyak (trial court erred in permitting defense hydrologist to testify regarding an expert opinion given by a geologist in a negligence action).
We further agree with the trial court's conclusion that it erred in permitting defense counsel to bolster Dr. Urbach's testimony by referring to a medical journal article. Under section 90.706, authoritative publications can only be used during the cross examination of an expert and cannot be used to bolster the credibility of an expert or to supplement an opinion of the expert which has already been formed. Green v. Goldberg, 630 So.2d 606 (Fla. 4th DCA 1993); Chorzelewski v. Drucker, 546 So.2d 1118 (Fla. 4th DCA 1989); Quarrel v. Minervini, 510 So.2d 977 (Fla. 3d DCA 1987), rev. denied, 519 So.2d 987 (Fla.1988); Medina v. Variety Children's Hospital, 438 So.2d 138 (Fla. 3d DCA 1983); Tallahassee Memorial Regional Medical Center v. Mitchell, 407 So.2d 601 (Fla. 1st DCA 1981). Over objection, defense counsel was permitted to question Dr. Urbach regarding this article. Dr. Urbach was also able to read portions of the article into evidence. The article clearly bolstered Dr. Urbach's opinion that Todd had not suffered a permanent injury resulting from the accident. This was an improper use of the medical text. See Chorzelewski (new trial ordered where plaintiff's attorney was allowed to read textual material from a medical treatise to the plaintiff's expert witness and to bolster the expert witness' own opinion by using the medical treatise); Medina (use of medical treatise to bolster testimony of physician on direct examination, along with other errors, required a new trial); Tallahassee Regional Medical Center (new trial properly granted where, among other errors, medical treatise was improperly used to bolster expert's opinion).
The order granting a new trial is affirmed.
AFFIRMED and REMANDED.
GOSHORN and ANTOON, JJ., concur.