787 So.2d 955 (2001)
Juan FLORES, Appellant,
v.
MIAMI-DADE COUNTY, Appellee.
No. 3D00-725.
District Court of Appeal of Florida, Third District.
June 13, 2001.
*957 Tilghman & Vieth and Robert C. Tilghman, Miami, for appellant.
Robert A. Ginsburg and Thomas A. Tucker Ronzetti and Jason Bloch, Assistant County Attorneys, for appellee.
Before COPE, GODERICH and RAMIREZ, JJ.
COPE, J.
Juan Flores, plaintiff below, appeals an adverse final judgment in his automobile accident case. We affirm.

I.
The plaintiff was in a low-speed collision with a Miami Dade County bus during stop-and-go traffic. The plaintiff's car and the bus were both traveling southbound in adjacent lanes on Collins Avenue in Miami Beach, when the two southbound lanes of traffic were required to merge into a single lane.
By the bus driver's account, the bus was moving from the right lane to the left lane and the plaintiff drove into the bus. By the plaintiff's account, the bus cut into the left lane and struck the plaintiff's car.
The plaintiff sought medical treatment for the first time the day following the accident. He brought suit against the County, claiming that he had suffered herniated discs in this 1997 accident. Plaintiff had previously suffered permanent injuries to his arm, neck, and back in a 1994 accident.
Plaintiff's treating physician and trial expert was Dr. Mladen Antolic, who had treated the plaintiff for the 1994 and 1997 accidents. It was his opinion that the herniated discs and related symptoms were caused by the 1997 accident.
Over objection, on cross-examination the County brought out the fact that at relevant times, the doctor had an agreement with the plaintiffs previous counsel whereby each would refer cases to the other. Further, the doctor and the lawyer both shared a runner who would recruit patients for the doctor and clients for the lawyer. The doctor paid the runner a monthly fee plus an additional amount for each patient that he referred. He had, over a period of time, paid the runner $80,000.[1]
The plaintiff contends that this was improper cross-examination. We disagree. The cross-examination was pertinent to the physician's bias.
Professor Ehrhardt has explained:
Whenever an expert testifies, counsel may cross-examine the expert regarding any matter about which the expert testifies in establishing his or her qualifications, both as a basis of arguing that the witness is not qualified as an expert and to argue that even if he or she is qualified, the jury should not give the opinion testimony great weight.
... In addition, each of the methods of attacking the credibility of a lay witness specified in section 90.608 may be used to attack the credibility of an expert. For example, the amount of the compensation the expert is receiving and the expert's past pattern of testifying for *958 one side in litigation are admissible to show a possible bias or prejudice on the part of the witness.
Charles W. Ehrhardt, Florida Evidence § 702.5, at 601-03 (2001) (footnotes omitted). The doctor's sharing of a runner with plaintiff's prior counsel, his extensive payments to the runner, and his reciprocal referral arrangement are facts which could reasonably be viewed as creating a bias toward testifying favorably to plaintiffs. Interest and motive of a witness are proper subjects for cross-examination. Id. § 608.5, at 465. The cross-examination was properly allowed.
Plaintiff contends that it is a crime for a physician to pay for the referral of patients, § 817.505, Fla. Stat. (Supp.1996), and argues that there can be no cross-examination if the conduct being inquired about amounts to a crime. We do not agree. The jury was not told that this financial arrangement might constitute a crime.[2] The cross-examination was pertinent to demonstrate bias, and is not defeated simply because the conduct might also constitute a crime. Drake v. State, 441 So.2d 1079, 1082 (Fla.1983) ("While relevant evidence should not be excluded merely because it points to the commission of a separate crime, Williams v. State, 143 So.2d 484 (Fla.1962), it must be relevant to a material issue other than propensity or bad character."); 23 Fla. Jur.2d Evidence and Witnesses § 208, at 244 (1995) ("Where evidence is otherwise relevant, it is not rendered inadmissible by the fact that it incidentally relates to facts which point to the commission of a separate offense.") (footnote omitted); Ehrhardt, supra, § 608.5 at 471 ("Evidence which is inadmissible as impeachment under other methods is admissible if it shows the bias of a witness.") (footnote omitted).
The trial court does, of course, have the discretion to limit cross-examination where "its probative value is substantially outweighed by the danger of unfair prejudice...." § 90.403, Fla. Stat. (1999). In ruling on the plaintiff's motion in limine in this case, the court excluded a great deal of what the County had proposed to present by way of cross-examination. The cross-examination which was actually presented was within the court's discretion.
The plaintiff argues that it is impermissible to cross-examine the doctor about his referral arrangements on any case other than the present one. The plaintiff urges that it was therefore impermissible for the doctor to be asked about his course of dealing with the plaintiff's former counsel and the financial arrangement he had with the runner. Again, we disagree.
"Partiality, or any acts, relationships or motives reasonably likely to produce it, may be proved to impeach credibility." (McCormick on Evidence § 39 at 58-59 (5th ed.1999)). As illustrated by Elkins v. Syken, 672 So.2d 517 (Fla.1996), and Florida Rule of Civil Procedure 1.280(b)(4)(A), there must be reasonable latitude for inquiry about the extent of a trial expert's alignment with one side, or another, of litigation practice. To that end, Elkins and the rule allow some discovery regarding work that the trial expert has done in other cases. See also Allstate Ins. Co. v. Boecher, 733 So.2d 993, 997-999 (Fla.1999). The inquiry extends not just to the compensation arrangements for the current case, see Fla. R. Civ. P. 1.280(b)(4)(A)(iii) 1., but also allows inquiry *959 into the expert's work in other cases. Id. R. 1.280(b)(4)(iii)2. 4.
The plaintiff argues in substance that the cross-examination amounted to an impermissible attack on the doctor's character. We disagree. The Evidence Code specifically allows "[a]ny party ... [to] attack the credibility of a witness by ... [s]howing that the witness is biased." § 90.608(2), Fla. Stat. (1999). The cross-examination in this case was within permissible grounds on the issue of bias and did not amount to a prohibited attack on character.

II.
The plaintiff next argues that the trial court allowed certain inadmissible hearsay during the doctor's cross-examination. Most of the items challenged by the plaintiff were excerpts of earlier testimony given to refresh the witness's recollection and were permissible for that purpose. In any event, the challenged testimony brought out the doctor's intent and understanding in entering into the arrangement with the runner, and the trial court could reasonably view the testimony as not constituting hearsay. See Chatman v. State, 687 So.2d 860, 862 (Fla. 1st DCA 1997).

III.
As his final argument, the plaintiff contends that the trial court allowed impermissible hearsay from medical records which had not been introduced into evidence. The County's expert, Dr. Jay Stein, offered the opinion that the plaintiff suffered at most a mild temporary strain in the 1997 accident, and that the complaints regarding herniated discs related to preexisting conditions and injuries.
Dr. Stein based his opinion, in part, on his review of the medical records prepared by Dr. Antolic, which were in evidence, as well as the records of another physician, Dr. Gloria Ramos, whose records were not introduced into evidence. Both sets of medical records revealed that plaintiff had complained of back pain prior to the 1997 accident. Dr. Ramos' records, which had been produced to the County pursuant to subpoena, also mentioned a history of herniated disc.
The plaintiff objected that the County expert should not be allowed to testify regarding the contents of Dr. Ramos' office records unless those records were introduced into evidence. The plaintiff contended that without introducing them into evidence, any testimony about those records constituted impermissible hearsay.
The trial court properly overruled the hearsay objection. Under section 90.704, Florida Statutes (1999), "Experts may rely upon hearsay in forming their opinions if that kind of hearsay is relied upon during the practice of the experts themselves when not in court." Charles W. Ehrhardt, Florida Evidence § 704.1, at 619 (2001) (footnote omitted); Bender v. State, 472 So.2d 1370, 1371-72 (Fla. 3d DCA 1985). There was no contention in the trial court that Dr. Ramos' records are not the kind of record that an expert in this field would rely on in the formation of an opinion on this subject.
The cases relied on by the plaintiff are not to the contrary. The question in Kelly v. State Farm Mutual Auto. Ins. Co., 720 So.2d 1145 (Fla. 5th DCA 1998), was whether the expert witness could lay the foundation to introduce the medical records of other physicians into evidence, simply because the expert witness had used the underlying medical records as the basis for the expert opinion. The court concluded that the expert witness could not do so. Id. at 1146. That is not the issue here.
*960 In Erwin v. Todd, 699 So.2d 275 (Fla. 5th DCA 1997), the trial court had ruled in limine that the medical records of a Dr. Zilioli were untrustworthy and inadmissible. Id. at 276. The defense expert nonetheless relied on those records as part of the basis for the expert opinion. Id. at 278. Since the defense expert's trial testimony contravened the court's pretrial ruling, a new trial was ordered. That likewise is not the issue here.
Affirmed.
NOTES
[1] Plaintiff's present counsel has no connection with any of these prior acts or the prior counsel or doctor.
[2] The doctor's arrangement with the runner and former counsel came to light in an investigation by the Florida Department of Insurance, in which the doctor had been granted immunity. This information was not given to the jury.