804 So.2d 390 (2001)
Patrick TOBIN and Patricia Tobin, Appellants,
v.
Kenneth W. LELAND, Sandra L. Stiller, and USAA Casualty Insurance Company, Appellees.
No. 4D00-1534.
District Court of Appeal of Florida, Fourth District.
October 3, 2001.
*391 Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, and Kelsay D. Patterson of Michael M. Tobin, P.A., Coral Gables, for appellants.
Carri S. Leininger of Williams & Leininger, P.A., West Palm Beach, for appellees-Kenneth W. Leland and Sandra L. Stiller.
Douglas D. Rozelle, Jr. of Rozelle and Call, West Palm Beach, for appellee-USAA Casualty Insurance Company.
WARNER, J.
This appeal arises from a final judgment entered subsequent to a jury verdict finding that appellant[1] suffered no permanent injury in an automobile accident. Appellant challenges solely the trial court's refusal to permit cross-examination of the defense doctor on statements from a book written by the doctor twenty years ago that were highly critical of the legal system in personal injury cases. Because the trial court did not abuse its discretion in controlling the scope and subjects of inquiry during cross-examination, we affirm.
Appellant suffered broken ribs and a punctured lung in an automobile accident in 1994. He was treated for about six months in 1994 and obtained no further treatment until December, 1997, when he was seen by a neurologist who diagnosed herniated discs. In his case-in-chief, appellant made no claim for lost income because he continued his occupation as a fishing boat captain/mate. His claim was for past and future medical expenses and pain and suffering.
One of appellees' expert witnesses at trial was Dr. John Sullivan, who had performed an independent medical examination of appellant. Twenty years ago, Dr. Sullivan wrote a book titled Lexisaurus Rex, in which he reviled personal injury suits, judges, juries, and lawyers in general.[2] Most of the book concerns medical *392 malpractice and the doctor's strong opinions about it. One chapter dealt specifically with advice to the physician witness. Appellees moved in limine to preclude appellant from using the book to crossexamine Dr. Sullivan. After extensive argument and the court's review of the deposition testimony of Dr. Sullivan, in which he disavowed some of the views expressed in the book, the court ruled that appellant would be precluded from using the book in voir dire or in argument. When the doctor testified, appellant could proffer the questions he desired to ask, and the court would rule on a question by question basis.
Dr. Sullivan testified at trial that he does not have a medical practice anymore but earns his living performing independent medical evaluations, ninety-five percent (95%) of which are for defendants and insurance companies. The doctor examined appellant, putting him through a routine orthopedic examination, and found no restrictions of motion. Based upon his examination, the doctor opined that appellant had not suffered a permanent injury as a result of the accident. He reviewed appellant's MRI scans and testified, contrary to appellant's treating physician, that they did not show any herniation of the discs in appellant's back caused by the accident. However, he conceded that there could be bulges caused by normal wear and tear of living. His testimony was consistent with that of the radiologist who testified that the MRI showed older disc degeneration but nothing which would have occurred as a result of the accident.
Appellant's counsel cross-examined Dr. Sullivan extensively about his current practice, which consists solely of providing defense medical examinations. Since he terminated his active practice in 1993, he could remember providing an examination for a plaintiff on one occasion.
After the initial cross-examination, appellant proffered questions and testimony concerning Dr. Sullivan's views expressed in his book. Because the court determined that it would not permit testimony with regard to Sullivan's general opinions about the legal system, the questions were limited to the chapter on physicians testifying as a witness in court. While much of this chapter focused on the doctor as an independent medical examiner of a party, it was not exclusively written for the doctor as a defense witness. The doctor admitted writing that honest physicians cannot live up to their oath to tell the whole truth in court. He explained that in a legal adversarial context physicians cannot discuss shades of gray inherent in their opinions. Appellees' counsel noted that the statement alone was taken out of context. Counsel pointed out that the book referred to the collateral source rule as an example, in which the jury does not hear evidence of benefits the plaintiff may have received. In the same sense, the doctor may not be able to tell the jury everything that he could because of the rules of evidence. Dr. Sullivan agreed with that interpretation.
Dr. Sullivan also agreed with his book's statement that almost any test can be dismissed or given lesser value. He admitted writing that physicians should avoid yes or no answers, stating that they should be allowed to explain their answers. The court earlier pointed out that this was generally good advice, probably written a thousand times. Dr. Sullivan further admitted writing that a doctor should state his finding openly on direct and defend them with his life on cross-examination. He should be fair, reasonable, and honest but never concede an important point. Dr. *393 Sullivan conceded that those statements were made in the book, adding, "[b]ut if the doctor doesn't believe why he's in court and what he's testifying about, he shouldn't be in court." In the book, he also advised that "[w]ithout being evasive or lying, you have to devise a means of giving an answer which will not serve the interest of the person cross-examining you."
Appellant's counsel stated that the purpose of such testimony was to demonstrate the witness's bias against plaintiffs and attempt to subvert/manipulate the truth. Noting the various statements in the book that specifically stated that the physician should not lie and should give an honest opinion, the court expressed concern that if it allowed portions of the book into evidence, then testimony about the entire book would necessarily follow. As a result, the trial would focus on Dr. Sullivan, and would get the trial "all out of perspective." Moreover, because the book was written approximately twenty years ago, the court would have to permit additional questions on how the doctor's views have changed with time.
Having listened to the doctor's explanations and the rest of the doctor's crossexamination, the court determined that the proffered testimony would not be of any benefit to the jury. The court thus sustained appellees' objection to the proffered cross-examination. However, the court did permit appellant to question Dr. Sullivan about whether he can discredit an MRI, knowing the deficiencies of that type of procedure, as the interpretation of the MRI was a significant issue in appellant's case. Nevertheless, while appellant's counsel asked many questions about the MRI, he did not ask Dr. Sullivan about discrediting the test.
A copy of the chapter of Dr. Sullivan's book is in the record on appeal, and the trial judge indicated that he had read it. The chapter consists of Dr. Sullivan's advice on being a witness, whether for the plaintiff or the defendant. He stated in the book that much of the advice is given based upon his own experiences and from reading books on the art of cross-examination. This chapter concerns a physician testifying generally and is not limited to testifying against plaintiffs. Some examples given involve the physician testifying for his own patient. The book itself is not part of the record.
The jury returned a verdict awarding appellant his past medical expenses of $19,766.38 and future medical expenses of $10,000. However, the jury did not find a permanent injury.
Section 90.403, Florida Statutes (2000), provides:
Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.
Evidence of bias is subject to balancing under the provisions of section 90.403, and a trial court's determination of how far an inquiry into bias may proceed is within the trial court's discretion. See Coolen v. State, 696 So.2d 738, 743 (Fla.1997); Pandula v. Fonseca, 145 Fla. 395, 199 So. 358, 360 (1941); Langston v. King, 410 So.2d 179, 180 (Fla. 4th DCA 1982).
Although attorneys should be given wide latitude when cross-examining witnesses to demonstrate bias or prejudice, see Purcell v. State, 735 So.2d 579, 581 (Fla. 4th DCA 1999), that latitude is not without its limits. "Where a trial court has weighed probative value against prejudicial impact ... an appellate court will not overturn that decision absent a clear abuse of discretion." Sims v. Brown, *394 574 So.2d 131, 133 (Fla.1991) (quoting Trees v. K-Mart Corp., 467 So.2d 401, 403 (Fla. 4th DCA 1985)); accord § 90.403, Fla. Stat. (2000). In Sims, the court added that "[t]he weighing of relevance versus prejudice or confusion is best performed by the trial judge who is present and best able to compare the two." 574 So.2d at 133; accord Carter v. Brown & Williamson Tobacco Corp., 778 So.2d 932, 944 (Fla.2000)(quoting Sims), cert. denied, ___ U.S. ___, 121 S.Ct. 2593, 150 L.Ed.2d 751 (2001).
In the instant case, the trial court reviewed the 20 year old statement of Dr. Sullivan regarding his general views on litigation, particularly medical malpractice, and doctors, lawyers, judges, and juries. While the dissent cites to Bryan v. State, 41 Fla. 643, 26 So. 1022 (1899), for the proposition that the trial court is afforded no discretion to exclude questioning going to the motives, animus, or the status of witnesses to a suit, the supreme court explained in Pandula that it did not actually consider the extent to which crossexamination would be permitted to show bias in Bryan. The Pandula court left the consideration of evidence of bias to the trial court's discretion, which will not be disturbed absent a "clear abuse of the discretion." 199 So. at 360. The trial court is granted this broad discretion because "no definite rule can be laid down as to what circumstances may be inquired about to show a witness' bias." Id.
Courts have identified certain areas of bias where a cross-examiner should be permitted to inquire, which include "circumstances [that] have some clearly apparent force, as tested by experience of human nature." IIIA John H. Wigmore, Evidence § 949 (Chadbourn rev.1970). They include intimate familial (or illicit) relationships, involvement in the instant litigation or other pending litigation involving the parties, past or present employment relationship, pending criminal charges against the witness, the witness's occupation (bias being one of many reasons why it is admissible), and racial or other group-based bias. See id. See, e.g., Stanley v. State, 648 So.2d 1268, 1269 (Fla. 4th DCA 1995)(reversed trial court's refusal to permit cross-examination of witness concerning homosexual relationship with the victim because it may have shown witness's bias); Smith v. State, 404 So.2d 167, 169 (Fla. 1st DCA 1981)(evidence of witness's generalized racial bias admissible to impeach because not unfairly prejudicial, confusing, misleading, or cumulative). However, some Florida courts have even limited cross-examination concerning bias in these traditionally permitted areas. See, e.g., Adams v. State, 783 So.2d 1226, 1227 (Fla. 5th DCA 2001)(in father's child abuse prosecution, the court affirmed limitation of cross-examination of mother concerning pending dependency proceedings against her).
In fact, when the inquiries into the conduct and acts that produce the alleged bias raise collateral issues, such evidence is generally excluded. See Pandula, 199 So. at 360; Wallace v. State, 41 Fla. 547, 26 So. 713, 722 (1899); Hernandez v. State, 360 So.2d 39, 41 (Fla. 3d DCA 1978). While the few recurring instances of bias can be discerned from the case law, "[b]eyond these common varieties of circumstances, no generalization can be attempted. New circumstances will constantly be presented, as suggestive of personal prejudice; and the decision [whether to admit it] should be left entirely in the hands of the trial judge." Wigmore, supra, § 949 (footnote omitted).
Applying the foregoing principles, the evidence of bias in this case did not include any of the recognized areas of bias requiring inquiry. The trial court thus had *395 broad discretion when addressing the proffered cross-examination of Dr. Sullivan. It exercised this broad discretion and limited appellant's cross-examination of Dr. Sullivan after reviewing the book and watching Dr. Sullivan's video deposition. Dr. Sullivan's comments concerned the general legal system and not this particular plaintiff or this particular case. The court therefore concluded that Dr. Sullivan's generalized bias against the legal system would not be significantly probative of the doctor's credibility in light of the potential to confuse or mislead the jury and occupy most of the trial time.[3] In fact, appellant's counsel did not proffer cross-examination statements from the book regarding the doctor's general opinions regarding the legal system, lawyers, and judges. The questions proffered dealt with his advice on how the physician-witness should approach cross-examination. Further, the trial court did not preclude appellant from cross-examining Dr. Sullivan with regard to his views on discrediting the MRI, a test that was involved in the case.
An analogous case is Outley v. City of New York, 837 F.2d 587 (2d Cir.1988), where the defendant city introduced evidence of prior lawsuits against the police brought by the plaintiff to show his litigiousness and bias toward white police officers. The court ultimately determined that proof of the prior lawsuits might be probative of a bias, but it is not conclusive on the issue.
In order for a jury properly to consider them, the particular details of each action, and the extent to which the bringing of each action was justified, must be before the jury. Opening up this area thus invites detailed inquiries, denials, and explanations, likely to lead to multifariousness and a confusion of issues. As such, at least in this case, it is an area of examination better left closed.
Id. at 595 (citation omitted). The court reversed for this and other reasons, finding that the district court abused its discretion by admitting the evidence of bias, despite the broad discretion afforded to trial courts to rule on such issues.
In this case, the trial court reviewed the various statements and concluded that the use of only portions of the book, written twenty years ago, would have to be rebutted to place the doctor's views in context. He would also have to explain those views that he now disavowed. Like the prior litigation in Outley, this would involve "detailed inquiries, denials, and explanations" all of which could lead to a confusion of issues. Id. at 595. Recognizing that there was a substantial danger that the entire focus of the trial would shift to Dr. Sullivan, rather than appellant's injuries, the court excluded most of the proffered crossexamination, concluding that the proffered questions would not really benefit the jury. The court permitted appellant to crossexamine the doctor on his views of discrediting scientific tests, a subject addressed in the book and specifically relevant to the issues in this case. However, appellant never raised the issue during the doctor's cross-examination regarding the plaintiff's MRI tests.
Additionally, appellant used other avenues to discredit Dr. Sullivan, including the fact that he performs independent medical examinations exclusively for defendants *396 and insurance companies, that those examinations are his sole source of income, that he solicits insurance companies for business, and that he was paid by the defense for this examination and opinion.
After application of the law to the facts of this case, we cannot say that appellant has shown a clear abuse of discretion. See Pandula, 199 So. at 360. We therefore affirm.
SHAHOOD, J., concurs specially with opinion.
FARMER, J., dissents with opinion.
SHAHOOD, J., concurring specially.
I agree entirely with the majority. I write only to quote from the statute cited by the majority, to emphasize section 90.403, Florida Statutes (2000), which provides:
Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.
The trial judge in this case was in the best position to determine whether the "probative value (of the relevant evidence) is substantially outweighed by the danger of unfair prejudice, confusion of issues, (or) misleading the jury...." I conclude that, in this case, deference should be given to the trial judge with respect to the admissibility of the evidence in question based on section 90.403, Florida Statutes.
FARMER, J., dissenting.
Today's majority opinion upholds a rather startling limit on cross-examination to show bias. The theory is that because it would take up some trial time in this personal injury action for a party to expose a medical expert's long standing bias and prejudice against personal injury lawsuits and their claimants, the trial court is authorized to rule out entirely any crossexamination about his prior writings on the subject. Because this decision cuts out the heart of an essential right of any litigant, I must respectfully dissent.
I begin by noting that we are not here concerned with a fact witness whom no party injected into the suit and with whom all must deal. Instead this is an expert handpicked by one party to be its medical witness. Thus the party voluntarily choosing this witness can hardly be heard to lament: "[o]f all the gin joints in all the towns in all the world, she walks into mine!"[4] Rather, it is we who should admonish: "[o]f all the experts in all the world, you chose the doctor with the impeachment baggage of this one." The point is that the difficulty on which the motion in limine rested is entirely selfinflicted. Yet the majority holds that not a single piece of this baggage of bias may be displayed before the jurythat plaintiff cannot explore a reasonable sampling of an animus harbored by the witness against all personal injury plaintiffs and their claims, about which he wrote some years ago.
Under section 90.608(2), any party may attack credibility by showing that a witness is biased. As the supreme court has acknowledged, "[o]ur evidence code liberally permits the introduction of evidence to show the bias or motive of a witness." Gibson v. State, 661 So.2d 288, 291 (Fla. 1995). Bias may be proved by any matter tending to show a motivation indicating that a witness may be testifying untruthfully. *397 Jones v. State, 678 So.2d 890, 892 (Fla. 4th DCA 1996).
The majority seek to justify the exclusion of cross-examination entirely by invoking that old appellate refuge, the discretion of the trial court. They say that the trial judge has discretion to entirely prevent cross-examination as to bias when the probative value is outweighed by the probability of unfair prejudice or confusion. They cite Sims v. Brown, 574 So.2d 131 (Fla.1991), and Trees v. K-Mart Corp., 467 So.2d 401 (Fla. 4th DCA 1985). Neither case supports such a proposition.
In Sims, where a report showing a history of negligence was excluded, the court concluded that the relevance of the report was "even more obscure" than the negligence claimed at trial. Sims, 574 So.2d at 133. Trees involved the admission of a prior conviction for shoplifting in plaintiff's personal injury action for damages from a later false arrest. Neither case involved the complete exclusion of clearly proper cross-examination to show bias on the theory that it would lead to confusion or take up trial time unnecessarily. Obviously the majority confuses the complete exclusion of cross-examination on a particular subject with a mere limit on how much questioning will be tolerated. It is the difference between allowing some or allowing none at all that the majority confuses.[5]
The power to exclude some relevant evidence in its entirety for certain reasons arises from section 90.403, which currently provides:
"Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."
I say "currently provides" because as originally adopted this provision actually read:
"Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, undue waste of time or needless presentation of cumulative evidence." [e.s.]
In 1978 the legislature removed the phrase "undue waste of time" as a basis for excluding relevant evidence. Today the majority restores the deleted text.
The majority's primary justification for barring impeachment of the doctor with his own words is that it would take up too much trial time to do so. In effect the rationale is that it would be an "undue waste of time" to allow the party to impeach the expert with his own book.[6] Neither *398 the trial judge, the defendants nor the majority, however, can cite a single Florida case where a party was utterly precluded under section 90.403 from making any use of non-cumulative, clear evidence of bias and prejudiceindisputably admissible in all other respectssimply because such evidence would amount to an undue waste of time.
None of the other principal Florida cases relied on by the majority support its holding. As the court in Pandula v. Fonseca, 145 Fla. 395, 199 So. 358 (1940), made clear:
"This court has held that it is error to exclude questions touching interest, motives, animus, or the status of witnesses in a suit. But the question as to the extent to which cross-examination would be permitted to show bias or interest was not considered in either case." [e.s.; c.o.]
145 Fla. at 398, 199 So. at 360.[7] In Coolen v. State, 696 So.2d 738, 743 (Fla.1997), the court plainly said, "[h]ow far the inquiry can proceed into the details of the matter is within the court's discretion." [e.s.] So too with Langston v. King, 410 So.2d 179, 180 (Fla. 4th DCA 1982), where we said: "we also hold it was error for the trial court to refuse to allow the appellees' expert to be questioned about any agreement for compensation he had with appellee." The case we confront today, however, involves a total ban on any cross-examination to show that from his earlier book he harbors a strong bias against the very kind of claim in trial. This case does not involve an issue "as to the extent to which cross-examination would be permitted...." While a judge has discretion to limit evidence that is truly duplicative, that hardly means that a judge can entirely limit an inquiry into bias.
I appreciate deference to real trial court discretion, but in this instance I do not agree that the trial court exercised any discretion to which we should defer. As the supreme court said a long time ago in Bryan v. State, 41 Fla. 643, 26 So. 1022 (1899):
"Questions touching interest, motives, animus, or the status of witnesses to the suit, or parties to it are not collateral or immaterial. As to such matters inquiry may be had, and it is not within the discretion of the court to exclude it...." [e.s.]
41 Fla. at 661, 26 So. at 1028; see also Alford v. State, 47 Fla. 1, 7-8, 36 So. 436, 438 (1904). The majority fails to recognize that section 90.608(2) lays down a rule, and a rule is the very antithesis of discretion. This statute codifies what has long been held to be the essential purpose of the basic right of cross-examination. Sheiner v. State, 82 So.2d 657, 661 (Fla.1955) ("[C]ross-examination under oath [is] essential to due process because it is the means recognized by which we test the probity of the evidence and eliminate that which is trumped up or of doubtful veracity."); Cox v. State, 441 So.2d 1169, 1169-70 (Fla. 4th DCA 1983) ("It is fundamental that `[a]ll witnesses are subject to crossexamination for the purpose of discrediting them by showing bias, prejudice or interest....'").
The trial judge concluded that the proposed cross-examination would not be of *399 benefit to the jury. The majority seeks to sustain this holding by suggesting that the views expressed in this expert's book do not inherently suggest bias. I am thus provoked to ask: Since when is a generalized bias against personal injury litigation not significantly probative of the credibility of a medical expert in a personal injury case? If it is not, what indeed would be? Clearly the opinions of a medical expert who believes that personal injury litigation is what this one has described could well be the product of a strong animus rather than of medical science. With all respect to the trial judge and my colleagues, this rationale simply cannot be taken seriously.
And even if the concern about the use of trial time to explain prior statements of bias against personal injury suits and plaintiffs were valid, the majority has done nothing to show why it would preclude only cross-examination of him on the subject. If the past writings of this particular expert suggest a bias and thus require explanation, why should the remedy come out of the case of the opposing party? Why shouldn't the remedy instead be simply to curtail the party who called the witness from "wasting" time trying to explain why his previously articulated biases have not colored his opinions in the case being tried? If, indeed, it is truly a waste of time for an expert to rehabilitate his bona fides by trying to explain his paper trail, why shouldn't that time be taken from the party choosing him as the expert witness? Without any justification for doing so, the trial judge has imposed the burden of this witness on the wrong party.
Recently, the third district decided the mirror image of this case in Flores v. Miami-Dade County, 787 So.2d 955 (Fla. 3d DCA 2001). In Flores, plaintiff argued that a trial judge erred in failing to exclude in its entirety cross-examination of the plaintiffs medical expert as to a relationship between the witness and plaintiff's counsel. The doctor and lawyer had agreed to refer cases to each other and had shared the expenses of a runner who recruited clients for both. Plaintiff argued that the court should exclude the cross-examination entirely under section 90.403 because it showed conduct that amounted to a crime. The trial court refused to bar cross-examination on the subject entirely, as the party urged, but imposed limits on it and thereby "excluded a great deal of what the County had proposed to present by way of cross-examination." The third district rejected the argument that the court could exclude the cross examination in its entirety. It did agree that the cross-examination could be limited but not excluded entirely. It therefore affirmed the trial judge. The case we confront today presents the identical issue, except from the opposing perspective and with a slightly different way of showing bias. The results should be the same, and the fact that today's opinion reaches the opposite result places it in clear conflict.
The theory that cross-examination about the views expressed in this book involves a collateral issue, and not one of the "traditional" areas of bias, cannot possibly be valid. Cross-examination about a bias of an expert is even more critical than questioning about qualifications. Expert testimony is admissible only when "scientific, technical, or other specialized knowledge will assist the trier of fact."[8] Opinions as to a fact in issue are permitted only from a *400 witness qualified as an expert. The expert necessarily brings the authority of his expertise to the witness standand this is doubly true with medical doctors. An adverse party has the strongest possible interest in demonstrating that his opinion is not the fruit of skill in the art but of bias in the heart. This expert has written a book attacking the institution of personal injury litigation and the good faith of its claimants and lawyers. To suggest that such views are collateral to his opinion in this case is to believe that doctors are beyond such mortal, human animus, that they are unreachable by the forms of prejudice to which ordinary minds are vulnerable and are moved only by their scientific, rarified knowledge.
Challenging the credibility of an expert witness by showing bias has never been thought unfairly prejudicial or a waste of time, until now. Planting seeds of the bias of an expert has never been considered as sowing confusion, until now. Discrediting an expert with his own hand has never been thought pernicious because he should be given a chance to explain his writings, until now. The fact that there might be other impeachment evidence available has never been approved as a justification for the complete exclusion of the most forceful and direct proof of bias, until now. And while the majority may think that the doctor's attack on "personal injury suits, judges, juries, and lawyers in general" applies only to the "general legal system" and not "this particular plaintiff or this particular case," after catching him on cross-examination trying to explain the actual words he wrote the jury may well figure otherwise.
In short, the justification for this blanket exclusion is truly unprecedentednot only by the lack of statutory and case authority but equally by the failure of any rationale. In dissenting, I hope the supreme court will acknowledge the clear conflict that this decision represents and return the law of evidence to its former stance.
NOTES
[1] Any reference to "appellant" will mean Patrick Tobin for the purposes of this opinion, but we recognize that there is more than one appellant on appeal.
[2] Specifically, appellant brought out statements regarding Sullivan's general dislike of attorneys; his disregard for the quality of jury pools in the 1970's; and his discovery in middle age that his natural father was actually a plaintiff's lawyer for a time.
[3] "Section 90.612(1)(b) recognizes the trial judge's responsibility to reasonably control the interrogation of witnesses and the presentation of evidence so as to `avoid needless consumption of time.' Evidence which has minimal probative value can be excluded under section 90.612(1)(b) when it is a waste of time, even though the court cannot exclude it on that basis under section 90.403." Charles W. Ehrhardt, Florida Evidence § 403.1 (2001 ed.).
[4] For the uninitiated, the quoted words come from the 1942 Warner Brothers movie, Casablanca, penned by Julius J. Epstein, Philip G. Epstein and Howard Koch.
[5] I agree with Professor Ehrhardt that "[e]vidence which has a minimal probative value can be excluded." See note 3, above. The problem with using those views to justify the result in this case is that it cannot possibly be fairly said that the cross-examination excluded by the trial judge here would have minimal probative value.
[6] The trial judge concluded that allowing any cross-examination about this book would involve "detailed inquiries, denials and explanations," all of which would lead to a confusion of issues and that the focus of the trial would be deflected to the credibility of the witness rather than plaintiff's claim. Well if that were true we should deplore the appalling deficiency in the powers of hapless trial judges in this stateso constrained in controlling such matters would they be, lacking even the power to place fair limits on a lawyer's ability to expend trial time.

The short answer to this putative fear is "not while there are appellate courts." Any confusion or deflection of issues would consume a trial only if we judges let it happen. This is obviously just another example of the misuse of the "parade of horribles" argument. Because the actual rule is that a judge cannot bar cross-examination of this kind completely but reasonable limits can be placed on it, surely we should reject this argument out of hand.
[7] I might also point out that the specific subject of bias in Pandulahow much an expert was paid to testify on behalf of a party would clearly be allowed today. Both Allstate Insurance Co. v. Boecher, 733 So.2d 993 (Fla. 1999), and Elkins v. Syken, 672 So.2d 517 (Fla.1996), proceed on the unchallenged assumption that the amount of the fee received by an expert to testify is both discoverable and admissible evidence, even if the expert's income tax return is not.
[8] See § 90.702, Fla. Stat. (2000) ("If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.").