Gross, J.
State Farm raises two issues in this appeal of a final judgment entered for the insured. State Farm argues first that the trial court erred in denying its summary judgment and directed verdict motions because the insured failed to timely comply with policy obligations following the loss. State Farm also argues that, at a minimum, a new trial is required because the introduction of the insured’s health issues at trial was both irrelevant and highly prejudicial.
We reject the first issue because the insured’s substantial compliance with her post-loss obligations under the policy involved issues of fact properly resolved by the jury. On the second issue, because evidence of the insured’s health should never have been introduced, we reverse for a new trial.
The insured, Dina Figueroa, first filed a claim on October 80, 2005, after Hurricane Wilma hit on October 24,2005. State Farm sent an adjuster to her home on December 17,2005. The adjuster believed that 29 roof tiles had been damaged by the hurricane, but that, because the cost to repair those roof tiles did not exceed the insured’s policy deductible, it was unable to provide a payment. State Farm advised the insured that she was free to obtain her own estimate of the cost of repairs, and to contact it immediately if she obtained an estimate that was above her deductible. In 2005, State Farm did not insist that the insured file a sworn proof of loss.
The insured contacted a few roofers, but none were interested in the job. In January 2006, the insured began dealing with a serious medicál condition, which distracted her from following up with her claim.
In late 2008, the insured obtained a contractor’s estimate that included a new roof because more than 25% of her roof tiles had been loosened by wind damage. The contractor estimated that a new roof would cost $43,648. The insured informed State Farm in early 2009 that she wanted to reopen her claim, sending along the contractor’s estimate.
State Farm sent another adjuster to the insured’s home in April 2009, who concluded that the original estimate was correct. After that inspection, State Farm sent the insured a letter that outlined her obligations under the policy following a loss. In relevant part, the policy required her to protect the property from further damage by making reasonable and necessary temporary repairs, and to submit to State Farm a signed sworn proof of loss within 60 days of the loss. The policy provided that no action could be brought against *888 State Farm unless there was compliance with these provisions.
. The insured submitted a sworn proof of loss along with the contractor’s estimate on June 8, 2009. Counsel for State Farm responded in late September 2009, informing the insured that the proof of loss did not comply with policy provisions. Subsequently, upon State Farm providing a proof of loss form to the insured in March 2010, the insured completed and submitted the proof of loss form on June 10, 2010.
On June 22, 2010, State Farm notified the insured that it was relieved of its obligations under the policy because of the insured’s material breach, specifically, her failure to timely submit a valid sworn proof of loss. The insured filed suit the following month.
State Farm moved for summary judgment, arguing that the insured failed to comply with her post-loss obligations under the policy. It argued that the insured failed to submit a sworn proof of loss within 60 days of the loss and failed to protect her property from further damage by making reasonable and necessary repairs. The insured responded that she substantially complied with her post-loss obligations and that State Farm was not prejudiced by her untimely compliance. The insured also explained that she was unable to immediately dispute State Farm’s estimate in 2005 because she began experiencing health issues. The trial court denied the motion.
Prior to trial, State Farm moved in li-mine to prevent the insured from discussing her medical issues, arguing that such evidence was both irrelevant and highly prejudicial. The insured argued that the evidence was necessary to explain the 3-year gap between her initial claim at the end of 2005 and her reopening the claim in early 2009. The court agreed with the insured and denied the motion.
At trial, in addition to arguing that the insured’s noncompliance with the policy provisions precluded recovery, State Farm argued that the insured needed a new roof not because it was damaged by Hurricane Wilma, but because of improper installation and natural wear and tear. Both sides called roofing experts to testify about causation and damages.
The jury found that the insured substantially complied with her post-loss obligations of submitting a sworn proof of loss within 60 days and protecting her property from further damage by making reasonable and necessary repairs. It awarded her the full amount requested to replace her roof. State Farm’s post-verdict motion for a new trial was denied. This appeal followed.
I.
Rulings on summary judgment and directed verdict are reviewed de novo. See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000); Meruelo v. Mark Andrew of Palm Beaches, Ltd., 12 So.3d 247, 250 (Fla. 4th DCA 2009).
As to State Farm’s first issue, we hold that the trial court did not err in denying its summary judgment or directed verdict motions. Whether an insured substantially complied with policy obligations is a question of fact. See Solano v. State Farm Fla. Ins. Co., 155 So.3d 367, 370 (Fla. 4th DCA 2014) (stating that, “where an insured cooperates to some extent, a fact question remains as to whether the condition is breached to the extent of denying. the insured any recovery under the policy.”). Whether an insurer is prejudiced by an insured’s untimely compliance is also a question of fact. See Kramer v. State Farm Fla. Ins. Co., 95 So.3d 303, 306 (Fla. 4th DCA 2012), Kramer explains that, al *889 though an insured’s “untimely presuit submission of the sworn proof of loss is presumed to have prejudiced the insurer,” that presumption can be rebutted by the insured showing “that the insurer was not prejudiced”.
State Farm argues that Kramer conflicts with Goldman v. State Farm Fire Gen. Ins. Co., 660 So.2d 300, 306 (Fla. 4th DCA 1995), where we held that an insured’s noncompliance with a policy provision that is a condition precedent to suit “precludes an action on the policy regardless of a showing of prejudice by the insurer.” But the insured in Goldman failed to perform the policy obligation of submitting to an examination under oath before filing suit. Although the insureds in Kramer did not timely submit a sworn proof of loss within 60 days, they did submit it before filing suit.
Similarly, here, although the insured did not submit a sworn proof of loss within 60 days of the loss, she did so before filing suit. In 2005, State Farm responded to the insured’s claim and evaluated it without requesting a sworn proof of loss. The insured first submitted a proof of loss shortly after notifying State Farm that she wished to reopen her claim in 2009. When State Farm advised the insured that the proof of loss did not comply with the policy and provided her with its own form, the insured completed and returned that proof of loss form. The insured complied “to some extent,” creating a question for the factfinder. See Solano, 155 So.3d at 370.
Although the insured’s compliance with the policy provision was untimely, because she complied prior to suit, whether that compliance was substantial was a fact question. Such untimely compliance presumes prejudice to the insurer, which the insured can overcome by showing that the insurer was not prejudiced. Because substantial compliance and prejudice were both questions of fact,'the trial court did not err in denying State Farm’s summary judgment and directed verdict motions.
II.
“The appropriate standard of review applied to a trial court’s denial of a motion for a new trial is whether the trial court abused its discretion.” Hernandez v. Gonzalez, 124 So.3d 988, 989 (Fla. 4th DCA 2013) (quoting Izquierdo v. Gyroscope, Inc., 946 So.2d 115, 117 (Fla. 4th DCA 2007)). “Rulings’ on the admission of evidence are reviewed under the abuse of discretion standard.” Cantore ex. rel. Cantore v. West Boca Med. Ctr., Inc., 174 So.3d 1114, 1117 (Fla. 4th DCA 2015).
As to State Farm’s second issue, we agree that the insured’s health was .not relevant, to any issue in the case. “Relevant evidence is evidence tending to prove or disprove a material fact,” § 90.401 Fla. Stat. (2015); see also Sims v. Brown, 574 So.2d 131, 134 (Fla.1991) (explaining that, tó be legally relevant, evidence must “bear[] on a fact to be proved” and have “a tendency to make the fact more or less probable”). Because no provision in the policy allowed illness.to excuse noncompliance or untimely compliance with the insured’s obligations, evidence of the insured’s health did not tend to prove or disprove that she substantially complied with the policy obligations or that State Farm was not prejudiced by her untimely compliance.
Not only did the insured’s health not “assist the jury in determining a material fact at issue,” it “may have led the jury to infer” that her health was a factor to be considered in determining whether she substantially complied. Barrett v. State, 605 So.2d 560, 561 (Fla. 4th DCA 1992). Where evidence is both irrelevant and highly prejudicial, it can amount to *890 harmful error. See Osborne v. State, 997 So.2d 1266, 1268-69 (Fla. 4th DCA 2009) (“Admission of the irrelevant, highly prejudicial gun evidence was harmful error”). “ ‘Unfair prejudice’ has been described as ‘an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.’ ” McDuffie v. State, 970 So.2d 312, 327 (Fla. 2007) (quoting Brown v. State, 719 So.2d 882, 885 (Fla. 1998)). Evidence of the insured’s medical condition improperly injected the potential for a sympathy verdict in the case.
This was a case where State Farm’s main defense was that the insured failed to comply with her obligations under the policy, and that failure precluded an action on the policy. Because the insured’s health had no probative value, it could only have suggested that the jury make a decision on an improper basis.
The error in allowing this evidence was exacerbated by the multiple times it came up at trial. It was first mentioned by the insured’s counsel during opening statements. The insured testified on direct that she “had a recurrence of a life-threatening illness.” Counsel for State Farm questioned the insured about her employment during the 3-year gap suggesting that she was well enough to work during that period, which prompted the insured’s counsel to bring it up again on redirect:
Counsel: And during that time period, you were working at some time in that period, and at other times, you were not?
The insured: Correct.
Counsel: But even though you had this medical issue, you still needed to work? The insured: Yes. I was the only income in the house.
Moreover, the jury asked two questions about the insured’s health after she finished testifying. One question inquired into the nature of the health issue, and the other asked when the health issue began.
Because there is a reasonable possibility that the introduction of this irrelevant and prejudicial evidence contributed to the verdict, we reverse and remand for a new trial. See Special v. West Boca Med. Ctr., 160 So.3d 1251, 1256 (Fla. 2014).

Reversed and remanded.

Warner and May, JJ., concur.